**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Jared Rex PETERSEN et al., Defendant-Appellees.**

No. 72-2123.

United States Court of Appeals, Ninth Circuit.

Jan. 18, 1973.

Ann Bowen, Asst. U. S. Atty. (argued), James E. Mueller, Asst. U. S. Atty., William C. Smitherman, U. S. Atty., Tucson, Ariz., for plaintiff-appellant.

Fredric F. Kay, Asst. Federal Public Defender (argued), Tom Karas, Federal Public Defender, Tucson, Ariz., Robert B. Norgren (argued), Tucson, Ariz., Paul W. Colarich (argued), of Laber, Lovallo &. Colarich, Tucson, Ariz., for defendant-appellee.

Before MERRILL and DUNIWAY, Circuit Judges, and CONTI,* District Judge.

DUNIWAY, Circuit Judge:

The United States appeals from an order granting appellees' motion to suppress nine pounds of marijuana seized from them.[1] That seizure was the basis of an indictment charging them with illegally importing and possessing marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a) (1), 952 (a). We affirm.

In its briefs, the government argued that there was probable cause for the search. However, at oral argument government counsel stated that the government does not claim that there was probable cause. It relies only on the theory that there was a valid "border search". We confine our attention to that theory.

On December 2, 1971, Deputy Sheriff Corona observed appellees enter the United States from Mexico through the port of entry at Naco, Arizona. They were in an orange Volkswagen sedan with California license plates. Corona saw Customs Inspector Alshouse search both the appellees and their car; they seemed nervous, but no contraband was found.[2]

In the evening of the next day, December 3, Alshouse informed Corona that the same Volkswagen had entered the United States through the port of entry, and that it was occupied only by the driver, one Manuel Silva. Corona considered Silva a suspicious person because he had been known to associate with narcotic addicts. At Alshouse's direction, Corona followed the car down Second Street in Naco. Proceeding along side streets to avoid detection, Corona saw the Volkswagen once, but then lost contact with it for a period of approximately ten minutes.

Second Street runs east from the port of entry in Naco, about a block from the international boundary and parallel to it. A right turn from Second Street takes one to the "corrals," an area frequently used by smugglers to transfer contraband brought in from Mexico, while a left hand turn leads directly to Highway 92, the main highway running north out of Naco. The Second Street area is rarely used for residential traffic, but it contains five houses, a school, and a post office. It does not appear whether Silva or any of his friends or relatives lived in one of the houses.

When Corona next saw the Volkswagen it had three occupants and was travelling north on Highway 92. He saw it stop at a market, where one of the passengers entered the store and returned with a small bag. Shortly thereafter, at the direction of a Customs agent with whom he had been in radio contact and with the aid of another deputy, Corona stopped the car. The driver, Petersen, produced a driver's license and identification at Corona's request, but refused to open the trunk. Corona then shone his flashlight into the car, saw that Geisler and Carpenter were seated in it, that Silva was not, and that an open paper sack containing a box of plastic baggies was on the floor. Corona communicated with Customs officials, one of whom was

---

\* Honorable Samuel Conti, United States District Judge, Northern District of California, sitting by designation.

1. The appeal is properly taken pursuant to 18 U.S.C. § 3731.

2. On cross-examination Corona admitted that in his experience persons are usually apprehensive while waiting to be searched.

dispatched to the scene. After being informed of the foregoing facts, the agents searched Petersen for weapons and then searched the car, finding marijuana in the trunk.

The court held that the search was not a "border search." The government argues that it was because Corona, and hence the Customs agent who conducted the search, could be "reasonably certain of a probable smuggling offense."

■ The decisions of this court do not support the government's formulation of the test for a border search. It places too much emphasis upon the notion that the Customs agent need only be "reasonably certain," and is ambiguous with respect to what he must be reasonably certain about. Many of the crimes committed in border areas are "smuggling offenses," so that the Government's test appears to permit the search of a person and his vehicle at any time his actions could be characterized as suspicious. That is not the law. We do not mean to suggest that an officer cannot rely upon his experience in such matters to interpret the actions of persons whom he observes; our cases establish that quite the contrary is true. See, e. g., United States v. Markham, 9 Cir., 1971, 440 F.2d 1119, 1122. We simply are not prepared to hold that Fourth Amendment rights are completely abrogated as one approaches an international boundary.

Our cases establish two situations which will support a "border search" by Customs agents. The first test was stated in Alexander v. United States, 9 Cir., 1966, 362 F.2d 379:

"Where . . . a search for contraband by Customs officers is not made at or in the immediate vicinity of the point of international border crossing, the legality of the search must be tested by a determination whether the totality of the surrounding circumstances, including the time and distance elapsed as well as the manner and extent of surveillance, are such as to convince the fact finder with reasonable certainty that any contraband which might be found in or on the vehicle at the time of the search

was aboard the vehicle at the time of entry into the jurisdiction of the United States." 362 F.2d at 382.

That standard is not met here. Although the car was apparently not searched when it crossed the border on December 3, and while unbroken surveillance is not always required, Corona lost sight of the Volkswagen for a period of ten minutes, during which time it at least stopped to take on passengers. The district court correctly concluded that any contraband might have just as easily been loaded at that time. Compare United States v. Terry, 9 Cir., 1971, 446 F.2d 579. Thus, the search was not valid under Alexander.

The second set of circumstances which justify a "border search" were described in United States v. Weil, 9 Cir., 1970, 432 F.2d 1320. There we held that:

". . . if customs agents are reasonably certain that parcels have been (a) smuggled across the border and (b) placed in a vehicle, whether the vehicle has itself crossed the border or not, they may stop and search the vehicle. Similarly, if agents are reasonably certain that a person has crossed the border illegally, and has then entered a vehicle on this side of the border, we think that they may stop and search the vehicle and person. They can assume that he may have brought something with him." 432 F. 2d at 1323.

■ Again, this test was not met. Although the Volkswagen was seen heading in the direction of a "known smugglers' area," it was not a desolate area having access only to the border as in Weil and United States v. Markham, supra. The area was apparently within the city limits of Naco, had some population, and Highway 92 was just as accessible from Second Street as were the "corrals." Thus the mere fact that the Volkswagen contained additional persons when Corona next saw it does not satisfy the requirements of Weil. At that time it was travelling north on Highway 92; he did not see it stop and did not know where it had been. Corona could therefore not conclude, as in Weil, that the passengers

must have crossed the border illegally. As a matter of fact, he had seen them cross the boarder, legally, the day before. Similarly, there was no reason to believe that parcels, much less smuggled parcels, had been placed in the car. Finally, assuming *arguendo* that the stop was legal, we are unable to see how the knowledge gained by Corona thereafter, namely, the presence of the three persons and some "baggies" supplied the reasonable certainty that his surveillance did not. The search by the Customs agent was not a valid border search.

We do not hold that Deputy Corona was not properly suspcious of the Volkswagen and its occupants. He was clearly justified in placing them under surveillance. However, that surveillance did not provide him with information sufficient to support the search. Suspicion, absent probable cause or the inferences required by *Alexander* or *Weil,* is not enough. To paraphrase Justice Stewart, "[t]he word '[border]' is not a talisman in whose presence the Fourth Amendment fades away and disappears." Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.

Affirmed.