**UNITED STATES of America,
Appellee,**

**v.**

**Patrick Henry PATTERSON, Appellant.**

**UNITED STATES of America,
Appellee,**

**v.**

**Walter William LANE, Appellant.**

**Nos. 73-2911, 73-2912.**

United States Court of Appeals,
Ninth Circuit.

Feb. 28, 1974.

Warren R. Williamson (argued), of Federal Defenders, Inc., Roger Curtis McKee (argued), San Diego, Cal., for appellants.

Michael E. Quinton, Asst. U. S. Atty. (argued), San Diego, Cal., for appellee.

Before MERRILL and GOODWIN, Circuit Judges, and WOLLENBERG,* District Judge.

ALFRED T. GOODWIN, Circuit Judge:

Patrick Henry Patterson and Walter William Lane appeal their convictions for possession of marijuana with intent to distribute. They assert that the marijuana seized from their vehicle should

* The Honorable Albert C. Wollenberg, United States District Judge for the Northern District of California, sitting by designation.

have been suppressed because the customs agents lacked probable cause or warrant for the search. We reject this argument and affirm their convictions.

On April 2, 1973, at approximately 8:15 p. m., the appellants entered the United States from Mexico at the Tecate, California, point of entry. After their vehicle had been inspected by the immigration service, one of the appellants asked the inspecting officer for directions to San Diego and was told to continue north to Tecate Junction and then turn left on Highway 94.

Believing that the vehicle and its occupants might warrant further surveillance, one of the agents followed the appellants' car north from the station. At Tecate Junction, the appellants turned right on Highway 94 rather than left to San Diego. Still followed by the agent, the appellants drove eight to ten miles east and then stopped at an outdoor telephone booth. Meanwhile, another agent had taken a position in the driveway of the Patterson Ranch (apparently no connection with appellant Patterson) several miles farther to the east, waiting for the appellants to pass. At approximately 9:00 p. m., the appellants turned into the driveway and, after asking the agent to move his car, entered one of the houses on the ranch.

The Patterson Ranch is approximately one-quarter mile from the Mexican border in an area in which heavy smuggling activity had occupied the attention of the border patrol agents. Approximately two weeks earlier, the agent who was parked in the driveway had heard that a person had rented a house on the ranch for a month but had never stayed at the house for more than a few hours on two occasions.

After he had moved his car, the agent returned and maintained surveillance on the appellants for the next seven and one-half hours. At about 10:24 p. m. both appellants left the house, and returned a few minutes later. One was carrying a brown paper sack, which he had apparently collected from the grounds of the ranch. Ten minutes later, the appellants went out again and returned carrying several more bags. No such bags had been in the appellants' car when it passed through the border station.

At approximately 4:25 the next morning, the appellants left the house carrying a burlap bag. (The agent later testified that in his experience as a customs agent, marijuana had been carried in burlap bags in about 30 per cent of his cases.) The appellants entered their car and drove back west toward Tecate Junction, where their car was stopped and searched. The search disclosed 55 pounds of marijuana in paper bags inside burlap bags.

■ In Hernandez v. United States, 353 F.2d 624 (9th Cir. 1965), cert. denied, 384 U.S. 1008, 86 S.Ct. 1972, 16 L. Ed.2d 1021 (1966), we held that officers can conduct a search without a search warrant where they have probable cause to believe that the thing to be searched contains contraband and where that thing is threatened with imminent removal or destruction. The bags searched here were seized from a moving vehicle; we have no difficulty in holding that they were threatened with imminent removal. *See* Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The more difficult question is whether the agents had probable cause to believe that the car contained seizable contraband. The trial court concluded that they did. We sustain that factual finding as not clearly erroneous. *Cf.* Costello v. United States, 324 F.2d 260, 261 (9th Cir. 1963), cert. denied, 376 U.S. 930, 84 S.Ct. 699, 11 L.Ed.2d 650 (1964).

From the time that they crossed the border until the time that their car was stopped and searched, the appellants were never more than one mile from the Mexican border. The house in which they spent the night is within one-quarter mile of the border. The ranch on which the house is located is known to

be an area of heavy smuggling activity. The behavior of the appellants in asking directions to San Diego, after which they drove off in another direction, while innocent in isolation, suggests that they hoped to divert suspicion from themselves. Soon after arriving at the ranch, the appellants apparently retrieved some packages from its grounds. A common smuggling technique along the Mexican border involves the delivery of contraband across an unguarded border point by persons on foot. The contraband is then retrieved on the United States side. *See* United States v. Powell, 449 F.2d 335 (9th Cir. 1971). *Cf.* United States v. Markham, 440 F.2d 1119, 1122 (9th Cir. 1971); United States v. Weil, 432 F.2d 1320 (9th Cir. 1970), cert. denied, 401 U.S. 947, 91 S. Ct. 933, 28 L.Ed.2d 230 (1971); United States v. Kandlis, 432 F.2d 132 (9th Cir. 1971). Finally, the fact that the appellants left the house at 4:25 a. m. and drove north suggests that they wished to avoid detection by leaving the area early in the morning.

We have no doubt that the individual activities of the appellants on the night of April 2–3 might also have been consistent with innocent behavior. The appellants could have asked directions to San Diego purely for future reference. Entirely innocent travelers as well as smugglers might stop and use a telephone before visiting an area where smuggling activities are known to have taken place. All sorts of innocuous property could have been stored in the bags picked up outside the ranch house and loaded into the car. Burlap bags can and do contain a wide variety of commodities. Travelers often leave very early in the morning in order to avoid heavy traffic.

▊ Unquestionably, no one item of the government's evidence, considered in isolation, would have been sufficient to justify a reasonable man in the belief that the burlap bags loaded into the appellants' car contained contraband. Nonetheless, the totality of the evidence,

to an experienced border agent familiar with the methods employed by smugglers, did establish probable cause to believe that the appellants' car was being used to transport seizable contraband. The officers had "facts and circumstances within their knowledge and of which they had reasonably trustworthy information * * * sufficient in themselves to warrant a man of reasonable caution in the belief that * * * [contraband] was being transported in the automobile which they stopped and searched." Carroll v. United States, 267 U.S. at 162, 45 S.Ct. at 288. *See generally* United States v. Jit Sun Loo, 478 F.2d 401, 404 (9th Cir. 1973). The succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one.

This case is distinguishable from two of our recent cases which held that agents lacked probable cause to search. United States v. Majourau, 474 F.2d 766 (9th Cir. 1973); United States v. Petersen, 473 F.2d 874 (9th Cir. 1973). In both of these cases, the government also sought to justify the search as a border search and failed. In *Majourau* the vehicle had traveled between 80 and 90 miles from the border, without continuous surveillance, before it was searched. Most of the suspicious behavior occurred in downtown Yuma, 25 miles from the border, where the passing of a paper bag between two automobiles might evoke curiosity, but hardly probable cause to believe that crime was afoot. In *Petersen* we affirmed a trier of fact who found no probable cause for a search in a case in which there had not been continuous surveillance from the border and in which equivocal behavior did not give rise to a reasonable probability that smuggling was being accomplished.

Since we agree with the trial court that there was probable cause to stop and search the appellants' automobile,

we need not decide whether the search would also be sustainable as a valid extended border search.

The judgment of conviction is affirmed.