UNITED STATES of America,
Appellee,

v.

Eddie Leroy ANDERSON, Appellant.

No. 74–1029.

United States Court of Appeals,
Ninth Circuit.

Sept. 20, 1974.

As Amended Jan. 2, 1975.

Certiorari Denied Jan. 27, 1975.
See 95 S.Ct. 831.

Joseph A. Milchen, (argued), San Diego, Cal., for appellant.

Douglas G. Hendricks, Asst. U. S. Atty. (argued), San Diego, Cal., for appellee.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and NEILL,* District Judge.

## OPINION

ALFRED T. GOODWIN, Circuit Judge:

Eddie Leroy Anderson appeals his conviction for possession of heroin, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He contends that the evidence should have been suppressed as the product of an illegal search. We reject this contention, and affirm.

On February 21 and 22, 1973, an agent of the United States Customs Service learned from two informants that a man named Tutwiler was en route to the area near Calexico, California, to purchase heroin. Soon afterward, one of these informants told the agent that Tutwiler had purchased five ounces of heroin in Mexicali and that the heroin would be delivered in Calexico or Brawley.

Early in the morning of February 23, Tutwiler, Anderson, and two other men entered the United States from Mexico at the Calexico port of entry. After a cursory search produced nothing, the men and the vehicle were permitted to leave the border station but they were followed by customs agents. The car was driven 25 miles north to Brawley, where it stopped near various bars, a service station, a motel, and then a cafe. Shortly before noon, the four men left Brawley driving south. Two miles south of town, they turned around and returned part of the way to Brawley. Tutwiler stopped the car on the shoulder of the road near a lone palm tree. He left the car, looked up and down the road for traffic, and then apparently retrieved a small package from beneath a limb of the palm tree. Tutwiler returned to the car and drove back north through Brawley. At the border-patrol checkpoint north of town, Tutwiler and his companions were searched; four ounces of heroin were found hidden in Anderson's waistband.

The government contends that this warrantless search can be justified on any of three separate grounds: (1) an extended border search, (2) a "pat-down" search after a stop based upon a founded suspicion, or (3) a search supported by probable cause.

---

* The Honorable Marshall A. Neill, United States District Judge for the Eastern District of Washington.

## I. Extended Border Search

Extended border searches in this circuit fall generally into two categories: *Alexander* searches, and *Weil* searches. *See generally* United States v. Kessler, 497 F.2d 277 (9th Cir. 1974). Under Alexander v. United States, 362 F.2d 379 (9th Cir.), cert. denied, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966):

> " * * * the legality of the search must be tested by a determination whether the totality of the surrounding circumstances, including the time and distance elapsed as well as the manner and extent of surveillance, are such as to convince the fact finder with reasonable certainty that any contraband which might be found in or on the vehicle at the time of search was aboard the vehicle at the time of entry into the jurisdiction of the United States * * * ." 362 F.2d at 382.

Breaks in surveillance are permitted under *Alexander* when other circumstances establish with reasonable certainty that the goods discovered upon search of the suspect or his vehicle were goods under his control when he entered the country. *See, e. g.,* United States v. Mejias, 452 F.2d 1190, 1193 (9th Cir. 1971); Castillo-Garcia v. United States, 424 F.2d 482 (9th Cir. 1970). However, where the amount of contraband is small, and where it is not inaccessible, even a very brief lapse in surveillance prevents customs agents from relying upon *Alexander*. *See, e. g.,* United States v. Petersen, 473 F.2d 874, 876 (9th Cir. 1973).

■ Here, a quantity of heroin approximately the size of two quarter-pound sticks of butter was found concealed in Anderson's trousers. Because of a number of men seen entering and leaving Tutwiler's car after it had entered this country, and in view of the breaks in surveillance, it cannot be said that there was a reasonable certainty that the heroin found on Anderson was in the car at the time it crossed the border. Indeed, it is more reasonable to infer that Tutwiler picked up this contraband at the palm tree outside Brawley and gave it to Anderson. Hence, the search cannot be justified as an extended border search under *Alexander*.

■ Nor can the search be justified under United States v. Weil, 432 F.2d 1320 (9th Cir. 1970), cert. denied 401 U.S. 947, 91 S.Ct. 933, 28 L.Ed.2d 230 (1971). Under *Weil* a search north of the border will be considered to be the equivalent of a border search where it appears with reasonable certainty that the vehicle contained goods which have been smuggled or a person who has crossed the border illegally. *See also* United States v. Markham, 440 F.2d 1119, 1121–1123 (9th Cir. 1971).

After the *Weil* decision, we held in United States v. Vigil, 448 F.2d 1250 (9th Cir. 1971), that the car searched need not have recently crossed the border "if it is 'reasonably certain' that it contains goods or persons which have *just* crossed the border illegally." 448 F.2d 1251 (emphasis removed and added). Here the officers were reasonably certain that Tutwiler had retrieved narcotics from the palm tree, but knowledge that the narcotics had just crossed the border was problematic. The officers knew that Tutwiler was transacting business with smugglers. in Mexico, but that knowledge was too generalized to provide a *Weil* rationale for an extended border search. *See* Note, From Bags to Body Cavities: The Law of Border Search, 74 Colum.L.Rev. 53, 69–70 (1974).

## II. Founded Suspicion and Probable Cause

Next, the government contends that even if the search was not valid as an extended border search, the agents still had a founded suspicion entitling them to stop the vehicle in order to investigate Anderson and his companions. *See* United States v. Jaime-Barrios, 494 F.2d 455 (9th Cir.) cert. denied, 417 U.S. 972, 94 S.Ct. 3178, 41 L.Ed.2d 1143 (1974); United States v. Bugarin-Casas, 484 F. 2d 853 (9th Cir. 1973), cert. denied 414

U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974). Having stopped them, the government argues, the agents had a right to check for weapons. We need not decide whether the stop was legal in the absence of probable cause to arrest Tutwiler, who had been the subject of intermittent customs surveillance for nearly six weeks. The agents had probable cause to stop the car, arrest the occupants, and search for contraband. Whether the transaction was an arrest, or an investigatory stop, it was supported by probable cause. To find probable cause, the trial court had to examine the credibility of the informants who caused the Customs Service to initiate surveillance of Tutwiler and company.

The first informer told a customs agent on January 11, 1973, that Tutwiler was in Mexicali looking for a heroin supplier. Later that day Tutwiler was observed in Calexico, just across the line from Mexicali. The next day the informer told the customs agent that Tutwiler had bought some heroin in Mexicali. Although Tutwiler was followed for the next four days and searched every time he returned to the United States, the heroin was never found.

On January 23, 1973, the same informer told the customs agent that Tutwiler was back in Mexicali to buy more heroin for delivery in Calexico or Brawley. That day, Tutwiler entered the United States at Calexico. Three thousand dollars were found on Tutwiler's companion; the next day, when Tutwiler's party was again searched at the port of entry, the money was not found. Surveillance was ended on the night of January 25. Later that day, after Tutwiler had left the area, the informer reported to the customs agent that heroin had been thrown over the border fence at Calexico and delivered to Tutwiler in Brawley.

On February 22, 1973, this same informant told the Customs Service that Tutwiler was again en route to Mexicali to purchase heroin. The next day, the informer said that Tutwiler had bought approximately five ounces of heroin in Mexicali that would be delivered in Calexico or Brawley. As predicted, Tutwiler, Anderson, and two other men entered the United States at Calexico. As noted earlier, this odyssey ended in the arrest and search presently being challenged.

The agent with whom the informant had been working testified that he considered the informant to be reliable. He had received information from the informant approximately seven times since the first of January. This information proved to be accurate, and resulted in one arrest. The agent testified in chambers to his knowledge of the informant's methods and the manner in which the informant obtained his information.

The second informant first implicated Anderson on February 21, 1973, when he told another federal agent that Tutwiler, Anderson, and another man were scheduled to travel soon to Mexico to purchase some heroin. This informant described Tutwiler's auto and gave its license number. This agent testified that the informant had provided valid information in approximately seven other narcotics investigations; every case resulted in an undercover buy of heroin and an arrest. Again in chambers, the agent testified how the second informant had obtained his information. The court concluded that the informant was, in fact, reliable.

■ Anderson challenges the propriety of *in camera* hearings to determine the bases for the informants' knowledge. Under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for an informant's tip to provide grounds for a finding of probable cause, law-enforcement officers must establish both the reliability of the informant as well as the reasons for trusting the conclusions made by the reliable informant. United States v. Hamilton, 490 F.2d 598, 600 (9th Cir. 1974). The first part of this test—the reliability of the informant—was explored in open court, and we

agree with the trial court's finding that both informants were reliable. The government sought to satisfy the second part of this test by introducing evidence of the underlying circumstances warranting the informants' conclusions in this particular case. *See* Travis v. United States, 362 F.2d 477, 479 (9th Cir.), cert. denied, 385 U.S. 885, 87 S.Ct. 179, 17 L.Ed.2d 113 (1966). However, the government contended that if the bases of the informants' information were made known in open court, the identity of the informants would necessarily be revealed. For this reason, the government requested and was granted an *in camera* hearing on this issue. Anderson argues that this practice infringes on his Sixth Amendment right of confrontation and his Fifth Amendment right to due process of law.

In Roviaro v. United States, 353 U.S. 53, 58–62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) the Supreme Court noted that protecting an informant's confidentiality serves important law-enforcement objectives, and, therefore, determining whether to reveal his identity requires a balancing of the public interest in protecting the flow of information against the defendant's right to prepare his defense. Likewise, in McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), the Court held that disclosure of the identity of an informant was not constitutionally required on the facts of that case.

The case is distinguishable from *Roviaro* and *McCray* in at least one respect: Roviaro and McCray both sought disclosure of the names of the informants; Anderson purports to seek not their names but only the underlying circumstances which made their conclusions seem reliable to the government agents. This difference, however, does not detract from the government's privilege in a proper case to protect the identity of persons who furnish information to law-enforcement officers.

Interpreting *Roviaro*, this court recently held in United States v. Rawlinson, 487 F.2d 5 (9th Cir. 1973), that an *in camera* hearing was an appropriate means for determining whether the informant's identity and testimony would be relevant and helpful to the defense. Whereas the *Rawlinson* informant was an actual party to the transaction for which Rawlinson was convicted, and conceivably could have corroborated Rawlinson's defense of entrapment, the informant here apparently was not involved in Anderson's possession of heroin and could not have provided testimony relevant to Anderson's possession. Having endorsed an *in camera* hearing in *Rawlinson* for a limited purpose, we have a stronger case here for finding no error.

Faced as we are with an undisclosed informant who provided grounds for a warrantless arrest, the Court of Appeals for the Eighth Circuit remanded for an *in camera* hearing at which the trial court could examine the validity of the informant's information without exposing his identity. United States v. Hurse, 453 F.2d 128 (8th Cir. 1971). Likewise, the Proposed Rules of Evidence for United States Courts and Magistrates, Rule 510(c)(3) (June 28, 1973), provides:

" * * * If information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the judge is not satisfied that the information was received from an informant reasonably believed to be reliable or credible, he may require the identity of the informer to be disclosed. The judge shall, on request of the government, direct that the disclosure be made in camera * * * *."

The approach sanctioned in *Hurse* and the Proposed Rules is basically consistent with the standards set forth in McCray v. Illinois, *supra*. In *McCray*, the Court held that disclosure of the identity of an informer who provided information constituting probable cause for a warrantless search was not constitutionally required. The Court at 386 U.S. 312 n.11, 87 S.Ct. 1063, repudiated a dictum contained in Roviaro v. United

States, to the effect that "[i]n . . . cases [where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause] the Government has been required to disclose the identity of an informant unless there was sufficient evidence apart from his confidential communication." Roviaro v. United States, 353 U.S. at 61, 77 S.Ct. at 628.

Refusing, as it had in *Roviaro,* to impose any absolute disclosure rule, the Court appeared to endorse a somewhat attenuated "probable cause" version of the standard of review it had previously approved for use in situations where the informant's potential testimony went to the merits.[1] Thus, after reiterating the *Roviaro* rule, the *McCray* majority stated that "[*m*]*uch less* has the Court ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake." 386 U.S. at 311, 87 S.Ct. at 1062. (Emphasis added.) Summarizing its holding, the Court stated that it had "consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, *let alone* in a preliminary hearing to determine probable cause for an arrest or search." 386 U.S. at 312, 87 S.Ct. at 1063. (Emphasis added.)[2]

On the other hand, it seems clear that the *McCray* majority did not intend to promulgate a rule which would invariably preclude disclosure of an informant's identity to the accused or his attorney simply because the informant's information related solely to probable cause. In upholding the conviction, the Court stressed the completeness of the testimony and the availability of the testifying officers for cross-examination. 386 U.S. at 313, 87 S.Ct. 1056. By implication, the Court would seem to approve disclosure in instances where the trial judge deemed it necessary to assess credibility or accuracy. Yet the Court's stated reluctance to impose a fixed standard regulating disclosure indicates that a trial court's determination on this issue should be a matter of discretion.[3]

Thus, rather than establishing a fixed rule that either requires or precludes disclosure of the informant's identity when probable cause is in issue, we hold that the responsibility for striking the proper balance in each case rests with the trial judge. In striking that balance the trial judge, in the exercise of his discretion, can conduct an *in camera* hearing to which the defense counsel, but not the defendant, is admitted. The defense counsel could then be permitted to participate in the *in camera* proceedings and to cross-examine the *in camera* witness or witnesses. When defense counsel has been admitted to the

---

1. In *Roviaro,* the Court required a case-by-case balancing of the "public interest in protecting the flow of information against the individual's right to prepare his defense." 353 U.S. at 62, 77 S.Ct. at 629.

2. The Court went on to state:
   "* * * Indeed, we have repeatedly made clear that federal officers need *not* disclose an informer's identity in applying for an arrest or search warrant. As was said in United States v. Ventresca, 380 U.S. 102, 108 [85 S.Ct. 741, 745, 13 L.Ed.2d 684], we have 'recognized that "an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant," so long as the magistrate is "informed of some of the underlying circumstances" supporting the affiant's conclusions and his belief that any informant involved *"whose identi-*

   *ty need not be disclosed . . . was* 'credible' or his information 'reliable.'" * * * [Citation omitted.]'" McCray v. Illinois, 386 U.S. at 311, 87 S.Ct. at 1062. (Emphasis in original.)

3. *McCray's* explicit discussion of federal procedures was not constitutional doctrine but rather a commentary on the exercise of the Court's supervisory jurisdiction over the evidentiary rules applied by federal courts in criminal cases. But in upholding the constitutionality of the Illinois informer's privilege, the Court implicitly validated similar federal procedures and standards. Under the Illinois procedure, the trial judge had discretion to require or deny disclosure. See McCray v. Illinois, 386 U.S. at 305, 313, 87 S.Ct. 1056. A similar exercise of discretion by a federal judge would be constitutional.

*in camera* hearing for this limited purpose, the district court can and should, when appropriate, place defense counsel under enforceable orders against unwarranted disclosure of the evidence that he has heard. *Cf.* Alderman v. United States, 394 U.S. 165, 185, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). If the trial judge is satisfied that an *in camera* hearing in which neither the defendant nor his attorney participates is adequate to explore the foundations of the informant's information, then no disclosure is necessary. The trial court's determination will be reversed only if it constitutes an abuse of discretion or constitutional error.

In the present case, there is no reason to believe that the informer could have provided testimony relevant to Anderson's defense on the merits. Rather, his testimony related solely to the pre-arrest issue of probable cause. Since disclosure of the underlying circumstances of the informant's information would necessarily have revealed the informant's identity, the court properly considered the government's interest in the anonymity of the informer. The court accommodated the competing interest of the defendant in a fair trial through the use of an *in camera* hearing closed to the defendant and his attorney. We cannot say that the accommodation reached was an abuse of discretion. Nor can we say that the procedure infringed the defendant's rights under the Fifth and Sixth Amendments. *See* McCray v. Illinois, 386 U.S. at 313–314, 87 S.Ct. 1056. Moreover, having reviewed the transcript of the *in camera* proceedings, we affirm as not clearly erroneous the trial court's finding that the informant's conclusions were based upon sufficiently reliable information.

■ The information supplied by the informants, when combined with the agents' own observations of Tutwiler and Anderson, provided more than enough probable cause to believe that the car in which the men were driving contained seizable contraband. *See generally* United States v. Patterson, 492 F.2d 995 (9th Cir. 1974); Rebell, The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards, 81 Yale L.J. 703, 716–17 (1972).

■ Anderson's final argument is that, even if the agents had probable cause for the search, there were not exigent circumstances justifying the failure to secure an arrest or search warrant. We disagree. Not until Tutwiler was observed extracting a package from a palm tree outside Brawley did the agents have probable cause. Immediately afterward, however, Tutwiler returned to his car and began driving north. The agents had no way of knowing how long the suspects would remain in the area. Sufficient exigent circumstances existed to justify a warrantless search. *See* Chambers v. Maroney, 399 U.S. 42, 46–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. Patterson, 492 F.2d at 996.

The conviction is affirmed.