**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Pomposo CASIMIRO–BENITEZ, Defendant-Appellant.**

**No. 75–3335.**

United States Court of Appeals, Ninth Circuit.

March 26, 1976.

Rehearing and Rehearing En Banc Denied July 6, 1976.

Thomas D. Schaefer (argued), San Diego, Cal., for defendant-appellant.

Stephen V. Petix, Asst. U. S. Atty. (argued), Terry J. Knoepp, U. S. Atty., Stephen V. Petix, Asst. U. S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

OPINION

Before CHAMBERS and BARNES, Circuit Judges, and BOHANON,* District Judge.

BARNES, Circuit Judge:

Pomposo Casimiro-Benitez appeals from a judgment of conviction of illegal reentry of the United States by an alien after a prior conviction of illegal entry in violation of 8 U.S.C. § 1325, and of illegal reentry of the United States by an alien after a prior deportation in violation of 8 U.S.C. § 1326. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291, 1294. We affirm.

On June 14, 1975, at approximately 4:30 a. m., Border Patrol Agents John D. Pool and Franklin R. Shumate were patrolling an area of downtown San Ysidro, California, near the Toreador Motel, which is located between one-half and three-quarters of a mile from the international border with Mexico. Agent Pool was aware that this area was utilized by illegal entrant aliens for hiding purposes while waiting for transportation. He had personally apprehended other illegal aliens in that immediate vicinity.

On this particular night, Agent Pool was instructing Agent Shumate, a trainee officer, as to the use of the area surrounding

---

* Honorable Luther L. Bohanon, Senior Judge, Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

the Toreador Motel as a hiding place by illegal entrant aliens. As Agent Pool drove his patrol car slowly in front of the motel, he shined his hand-held ·spotlight on the trees and shrubbery alongside the Toreador to indicate to Agent Shumate where illegal aliens were likely to hide. At that instant, Agent Pool heard the rustling of leaves or breaking of branches in that very area. Immediately stopping his car, Agent Pool instructed Agent Shumate to investigate.

Looking over a wall that runs along the sidewalk and forms a part of the Toreador Motel property, Agent Shumate found the appellant and two other persons crouched down in a hiding position. To Agent Pool, the appellant appeared to be of Mexican descent, and "extremely dirty" in dress and personal appearance. R.T. 11. Based upon his previous experience, Agent Pool believed that appellant was an illegal entrant alien.

After a brief check of the area for additional illegal aliens, the two officers placed appellant and the two other persons in the back seat of their patrol vehicle. For the purpose of moving off of San Ysidro Boulevard to avoid the traffic, the car was moved approximately two hundred feet to a side street. There, the aliens, including appellant, were again removed from the patrol car and then processed. During this processing, the appellant was asked his citizenship and when he had entered the United States. R.T. 16–17. Prior to that time, he was not advised of his *Miranda* rights. A transport van was then summoned to pick up the aliens for further deportation processing.

Later that same morning, at approximately 7:30 a. m., Agent Pool contacted the appellant at Border Patrol Headquarters and gave him his *Miranda* warning which he acknowledged he understood. Further deportation processing then took place, during which Agent Pool took inked fingerprint impressions of appellant. These fingerprints were found by a qualified fingerprint expert to be identical to those taken in connection with the appellant's earlier deportation.

At approximately 9:00 a. m. on that morning, Border Patrol Agent William Gibson readvised appellant of his *Miranda* rights. Acknowledging that he understood those rights, appellant admitted that he was an alien and had entered the United States that morning from Mexico. Appellant further admitted that he had a prior conviction for illegal entry, dated June 18, 1974, and a prior deportation, dated April 26, 1972. C.T. 17.

On appeal appellant raises two issues. First, he argues that his being placed in the automobile, and his subsequent identification as an illegal alien, violated the fourth amendment, since the arrest was without probable cause. Second, he contends that the failure of the agents to give him his *Miranda* warning immediately following his apprehension violated the fifth amendment.

■ As to the first issue, we find no merit in appellant's contention. As stated by the Supreme Court, the agents here had probable cause if, at the moment of the arrest, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrested person] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964); *accord, United States v. McDowell,* 475 F.2d 1037, 1039 (9th Cir. 1973).

■ In applying the above test, this Court "must consider *all* the facts known to the officers and consider *all* the reasonable inferences that could be drawn by them before the arrest." *United States v. Martin,* 509 F.2d 1211, 1213 (9th Cir.), *cert. denied,* 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975). It must be remembered that "it is immaterial that each circumstance, taken by itself, may be consistent with innocence." *Hernandez v. United States,* 353 F.2d 624, 628 (9th Cir. 1965), *cert. denied,* 384 U.S. 1008, 86 S.Ct. 1972, 16 L.Ed.2d 1021 (1966); *see United States v. Patterson,* 492 F.2d 995, 997 (9th Cir. 1974). As *Patterson* further notes, the experience

of the arresting officers, the time of the day or night, and the distance from the border are also relevant variables. 492 F.2d at 996–97. In total, "[t]he question is one of fact, and each case necessarily turns on its own peculiar facts." *Martin, supra,* 509 F.2d at 1213.

In the instant case, Agent Pool had considerable experience in this particular border area and had previously apprehended other illegal entrant aliens in that specific location. The Toreador Motel is situated between one-half to three-quarters of a mile from the Mexican border. The time of apprehension was 4:30 a. m. When discovered, appellant was hiding behind a wall in a crouched position. He appeared to be of Mexican descent. He was wearing "extremely dirty" clothing and his personal appearance was also "extremely dirty." R.T. 11.

■ From these facts and circumstances, we conclude that the agents had probable cause to arrest appellant. To an experienced border patrol agent, the above facts and circumstances, when considered in their totality, were not consistent with innocent conduct. Rather, drawing on these facts and considering the reasonable inferences therefrom, Agent Pool concluded that appellant was an illegal entrant alien. We hold that Agent Pool had probable cause for so concluding.

In regard to appellant's second contention that the failure of the agents to give him his *Miranda* warning immediately following his apprehension violated his fifth amendment rights, we note that the government has stipulated that when the appellant was placed into the police car, he was "in custody at that point in time." R.T. 16. Thereafter, Agent Pool inquired regarding appellant's alienage, name, place of birth and date of birth. R.T. 13. Had appellant not been subjected to custodial interrogation when these questions were asked, they would have been permissible as general on the scene inquiries. As we stated in *Lowe v. United States,* 407 F.2d 1391, 1393–94 (9th Cir. 1969), "the Court in *Miranda* did not intend to abolish the accepted police

practice of making general on the scene inquiries of citizens to determine whether a crime has been committed or is in progress." Referring to the stopping of defendant Lowe's car by a patrol officer, the Court observed:

"When a law enforcement officer stops a car and asks the driver for identification, a vehicle registration slip, and upon receiving unsatisfactory answers further asks the driver's destination and business, no 'in-custody' interrogation, as discussed in *Miranda* takes place. This general on the scene questioning is a well accepted police practice; it is difficult to imagine the police warning every person they encounter of his *Miranda* rights . . . ."

*Id.* at 1394; *see United States v. Luther,* 521 F.2d 408, 410 (9th Cir. 1975). *Cf. United States v. Brignoni-Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580–81, 45 L.Ed.2d 607, 616–17 (1975).

■ Because the government has acknowledged that appellant was in custodial interrogation when the above inquiries were made, *Miranda* is clearly applicable here. By failing to give the appropriate warnings, appellant's answers to these inquiries were inadmissible at trial. By admitting such evidence, the trial judge committed error.

■ We hold, however, that this error does not necessitate reversal because it was harmless beyond a reasonable doubt. *See Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). There was more than sufficient evidence, independent of the *Miranda* error, for the trial judge to conclude that appellant was guilty of the offenses for which he was indicted: (1) Appellant's fingerprints were found by a qualified fingerprint expert to be identical to those taken in connection with his earlier deportation; (2) Documentary proof was presented to show that appellant had not subsequently obtained the permission of the Attorney General to reenter the United States prior to the date of his arrest in the present case; (3) A certified copy of appellant's prior con-

viction of illegal entry under 8 U.S.C. § 1325 was introduced by the government; (4) After being given the *Miranda* warning by Agent Gibson and acknowledging that he understood that warning, appellant admitted to Agent Gibson that "he was an alien and had just arrived in the United States from the interior of Mexico." He also admitted to the agent that "he had a prior record, including a conviction for illegal entry on June 18, 1974, and a prior deportation of April 26, 1972." C.T. 17.

Based on this abundance of evidence supporting appellant's conviction, we conclude that the *Miranda* error was harmless beyond a reasonable doubt. Accordingly, appellant's conviction is *affirmed*.

CHAMBERS, Circuit Judge (concurring):

I concur. I reach the result this way.

It is stipulated, when placed in the car, Casimiro-Benitez was in custody. (One may doubt it, but we must accept the stipulation.) I have no trouble with the officers placing the appellant under restraint. There is little reason to doubt the defendant (and his companions), crouching behind a wall at 4:30 a. m. near the Toreador, had committed some crime or were in the process of committing one. The chance for error on this guess would be less than one in a thousand.

The officers, therefore, had a right to find out who Casimiro-Benitez was. Of course, the officers at the beginning should have given him a Miranda warning. But at that point, they had a right to immediately take Casimiro-Benitez away and fingerprint him. That would have unraveled the whole thing. Surely the failure to give a Miranda warning didn't grow a poisoned tree that entitled the defendant to be permanently acquitted or to remain in the country.

We could reverse and the government could prove its case by official records, plus the testimony of the officers as to where they found Casimiro-Benitez. Thus, I do believe that the Miranda error was harmless.