**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Victor Ruben**
**CORRAL–VILLAVICENCIO,**
**Defendant-Appellant.**

**No. 83–1269.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 1984.

Decided Feb. 15, 1985.

John S. Leonardo, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Antonio R. Zuniga, Phoenix, Ariz., for defendant-appellant.

Before HUG, TANG and FARRIS, Circuit Judges.

TANG, Circuit Judge:

Victor Corral-Villavicencio ("Corral") appeals from his conviction of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). He argues that the search of the vehicle he was driving was not justified as an extended border search and that the customs officers lacked probable cause to stop the vehicle. We hold that although the stop and search of Corral's automobile was not made pursuant to a valid extended border search, the initial stop was justified on a reasonable suspicion of criminal activity, and the subsequent search was based on probable cause that his vehicle contained seizable contraband. We therefore affirm his conviction.

## I.

### FACTS

During the early morning hours of May 25, 1983, Customs Patrol Officers Ellis and Brost were on patrol in Coronado National Park near Douglas, Arizona, a remote area approximately .6 of a mile from the Mexican-United States border. At approximately 5:15 a.m., after just having left the picnic area of Montezuma Canyon and heading east, they passed a green sedan traveling west on Montezuma Canyon Road. The vehicle bore Arizona license plates and the driver of the automobile was the sole occupant.

The Customs Officers initiated a license plate registration check and discovered that the sedan had been registered to a female, one Irma Bermudez. The vehicle was not locally owned, as the registration check showed it was from Tucson. The officers then continued east to the entrance of the canyon and stopped their patrol car. Approximately ten minutes after the officers had first sighted the vehicle, they observed the sedan exit the canyon.

As the vehicle exited the canyon, the officers immediately pulled behind the car and stopped it. In addition to the foregoing, the basis for the stop was that this was a well-known smuggling area and that in the past eight years the customs office, which has had jurisdiction over it for approximately four of the eight years, had made 16 seizures. In fact, one of the customs agents involved in the search of Corral's vehicle had participated in the seizure of narcotics in the same area less than one month earlier.

After the stop, Officer Brost approached the vehicle and asked the driver to exit the sedan. He asked the driver for title to the car. The defendant replied that the car was not his and he did not know who the owner was. He produced a title, signed and notarized in blank. During this period the defendant appeared very nervous. Officer Brost then asked the driver his name and the driver advised that his name was Victor Corral. Officer Brost then used the keys of the vehicle to open the trunk of the sedan. A search of the trunk revealed over 100 pounds of marijuana. Corral was then arrested by the customs officers.

Corral was indicted for possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). Before trial, Corral moved to suppress any statements made by him at the time of the stop and the marijuana uncovered during the vehicle search. The suppression motion was denied by the district court and following a jury trial Corral was convicted on the marijuana possession charge. Corral was sentenced to a term of three years imprisonment. On condition that Corral be confined in a treatment institution or jail-type setting for six months, the court suspended the remainder of the sentence and placed Corral on probation for four years. The court also imposed a special parole term of two years.

## II.

### DISCUSSION

A. *Extended Border Search*

■ Searches conducted at the time of an initial border crossing and those

searches which qualify as "extended border searches" need not be supported by probable cause. *See United States v. Espericueta-Reyes,* 631 F.2d 616, 619 (9th Cir. 1980). The question before us is whether the vehicular search conducted by Officers Brost and Ellis was correctly construed by the district court as an extended border search, thus permitting the officers to search the vehicle without their having probable cause that a crime had been committed or that the car contained contraband.

We have previously recognized only two situations in which a car and its passengers are properly subject to an "extended border search", that is, a search away from the border where entry is not apparent. *See United States v. Perez,* 644 F.2d 1299, 1302 (9th Cir.1981). The facts in the present case suggest only one of these situations, which has previously been referred to as the *"case of the evasive entry", United States v. Kessler,* 497 F.2d 277, 279 (9th Cir.1974), or the *"Weil* search," *United States v. Anderson,* 509 F.2d 724 (9th Cir.1975), *cert. denied,* 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975), based on *United States v. Weil,* 432 F.2d 1320 (9th Cir.1970). Thus, if the search in the present case is to be upheld as an "extended border search", it must meet the standard articulated in *Weil.*

▇ In *Weil* the court stated:

It seems obvious to us that the right of customs agents to search a vehicle without probable cause is not confined to vehicles that have crossed the border ... We also think that, *if customs agents are reasonably certain that parcels have been (a) smuggled across the border and (b) placed in a vehicle, whether the vehicle has itself crossed the border or not, they may stop and search the vehicle.* (Emphasis added).

*Id.* at 1323.

It is crucial to point out that if the *Weil* standard is met, although a search is physically conducted away from the border, it will be considered to be the equivalent of a border search. *Anderson,* 509 F.2d at 726.

Thus, "the need for any cause, probable or otherwise, to suspect the legality of the ... possession of goods" is theoretically eliminated. *Kessler,* 497 F.2d at 279; *United States v. Tilton,* 534 F.2d 1363, 1366 (9th Cir.1976). *Weil's* "reasonable certainty standard," therefore, goes only to the issue of whether the car contains an object which has crossed the border, even if no information is available as to what the object might be. *See Kessler,* 497 F.2d at 279; *LaFave, Search and Seizure, A Treatise on the Fourth Amendment,* § 10.5, p. 302 (1975).

▇ The facts in the present case must therefore be examined to see if the officers were reasonably certain that parcels had been smuggled across the border and placed in Corral's vehicle. before they stopped him. Reasonable certainty is a higher standard than that of probable cause, *Kessler,* 497 F.2d at 279; it does not require knowledge beyond a reasonable doubt, but it does require that:

"the totality of facts and circumstances within the officers' knowledge of which they have reasonably trustworthy information be sufficient in the light of their experience to warrant a firm belief that a border crossing has occurred.

*Tilton,* 534 F.2d at 1366–67. We must make our determination based on the totality of the surrounding circumstances, considering in detail the facts of each case. *United States v. Majourau,* 474 F.2d 766, 769 (9th Cir.1973). In the present case we find the facts known to the customs agents at the time they stopped Corral were insufficient to make them reasonably certain that anything had been smuggled across the border and placed in Corral's vehicle.

In coming to the above conclusion, we have not ignored our cases holding it not necessary for an officer to observe a vehicle or contraband actually crossing the border. *United States v. Markham,* 440 F.2d 1119, 1121–22 (9th Cir.1971); *United States v. Weil,* 432 F.2d 1320, 1322–23 (9th Cir. 1970), *cert. denied* 401 U.S. 947, 91 S.Ct. 933, 28 L.Ed.2d 230 (1971). *See also United States v. Vigil,* 448 F.2d 1250, 1251 (9th

Cir.1971). Each of these cases, however, involved additional facts not present in this case. For example, in *Weil* and *Markham*, the officers observed additional passengers in the cars when they emerged from the border areas. In *Vigil*, the court noted that three of the four passengers were illegal aliens, who must have crossed the border illegally. 448 F.2d at 1251.

Although the specific fact of additional passengers need not necessarily be a part of the totality of the circumstances in each extended border search case, we note that the facts in this case lack any similar articulable fact that could supply the required firm conviction that something had crossed the border and was in Corral's car. The officers, for example, did not notice if the car was weighted down on its return from the Canyon area. *Cf. United States v. Figueroa-Espinoza*, 454 F.2d 590, 591 (9th Cir.1972). The reasonable certainty standard is not met in this case.

### B. *Investigatory Stop and Probable Cause*

Our finding that an extended border search is not supported by the record, however, does not end our inquiry. *United States v. Kessler*, 497 F.2d at 279. "In the context of smuggling and the neighborhood of the border," the same facts that give rise to some belief that goods have crossed the border are relevant to a consideration of whether the officers had probable cause to believe the car contained contraband. *Id.* We conclude that the record supports a finding that the initial stop of Corral's vehicle was based on a founded suspicion of criminal activity, sufficient for a brief investigatory stop, and that the additional facts available to the agents after the stop gave them probable cause to believe that Corral's car contained smuggled goods. Thus, the search of his car was justified under *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). *See also United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

### 1. *The Initial Stop*

■ An officer may make a brief investigatory stop of a moving vehicle if, under the totality of circumstances, the officer is aware of articulable facts leading to a reasonable or founded suspicion that the person stopped is engaged in criminal activity. *See United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574 (1975). The totality of circumstances should include the modes of operation of certain kinds of lawbreakers, taking into account inferences and deductions that may be apparent to trained law enforcement officers. *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695.

■ We find that the record in this case amply supports a brief investigatory stop. Corral's car was observed driving in and out of a picnic area six-tenths of a mile from the border at an unusual hour. The area was known to the officers as one in which frequent contrband pickups were made. In the experience of the officers, the time elapsed between Corral's entrance and exit from the area was the normal time for a contraband pickup operation in the area. Furthermore, the officers had reason to suspect that the driver was not the registered owner of the vehicle.

### 2. *Probable Cause to Search*

■ We find, additionally, that the events subsequent to the initial stop created circumstances sufficient to raise the agents' level of suspicion to probable cause to believe the vehicle contained contraband. *See United States v. Bates*, 533 F.2d 466 (9th Cir.1976). Once the agents had probable cause, their search of the vehicle without a warrant was justified under *Carroll* and *Ross*.

*Carroll* requires that the agents have had probable cause to believe that the car contained seizable contraband. As stated in *United States v. Patterson*, 492 F.2d 995, 997 (9th Cir.1974), this requires:

"facts and circumstances within their knowledge and of which they had reason-

ably trustworthy information ... sufficient in themselves to warrant a man of reasonable caution in the belief that ... [contraband] was being transported in the automobile which they stopped and searched." *Carroll v. United States,* 267 U.S. at 162, 45 S.Ct. at 288. *See generally, United States v. Jit Sun Loo,* 478 F.2d 401, 404 (9th Cir.1973). The succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one.

After the initial stop, the agents' suspicion that Corral was not the owner of the vehicle became certain. Corral showed the agents a title notarized and signed in blank, and told them he did not know who owned the car that he was driving. Additionally, the officers observed that Corral appeared very nervous. Thus, the agents had facts and circumstances within their knowledge that Corral's conduct was consistent with that of a person smuggling contraband. Upon stopping the vehicle, Corral did not dispel the officer's suspicions, but heightened them.

We find that these facts, although some are seemingly superficially innocent, when added to the facts already known to the agents, provided the required succession of events such that a prudent man could say that an innocent course of conduct was substantially less likely than a criminal one. *Patterson,* 492 F.2d at 997; *Bates,* 533 F.2d at 469. "The totality of the evidence, as viewed by the experienced customs officers familiar with the smuggling methods of the area established probable cause to believe that [Corral's] car was being used to transport contraband." *Bates,* 533 F.2d at 469. *See also, Kessler,* 497 F.2d at 279 (finding probable cause where officers observed auto slow down and stop at known smuggling point next to border).

As in *Bates* and *Kessler,* experienced officers observed the suspect driving a vehicle in a known smuggling area, in the early morning hours, acting consistent with the *modus operandi* for a contraband pick-up. *Bates,* 533 F.2d at 469; *Kessler,* 497 F.2d at 278. In addition, Corral clearly was not the owner of the car, and didn't even know who the owner was. *Cf. Bates,* 533 F.2d at 469 (suspect's use of rental car common to smuggling operations). In light of *Bates, Kessler,* and the observed actions consistent with the *modus operandi* for smuggling in the specific area in question, it would be unrealistic to expect the agents in this case to have decided to forgo a search of Corral's vehicle.

We are satisfied that the record supports a finding of probable cause to search Corral's vehicle under *Carroll v. United States.* Corral's conviction is therefore

AFFIRMED.