978 F.2d 1256
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Larry Donzell BOYD, Defendant-Appellant.
 No. 92-5179.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: October 8, 1992
Decided: October 29, 1992
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frank A. Kaufman, Senior District Judge. (CR-91-141-K)
 Fred Warren Bennett, Federal Public Defender, Denise Benvenga, Assistant Federal Public Defender, Baltimore, Maryland, for Appellant.
 Richard D. Bennett, United States Attorney, W. Warren Hamel, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 Affirmed.
 Before PHILLIPS, MURNAGHAN, and WILKINS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Larry Donzell Boyd appeals from the district court's denial of his motion to suppress a gun taken from his person during the course of an investigatory stop which led to his arrest and ultimate conviction under 18 U.S.C.A. § 922(g) (West Supp. 1992). Boyd argues on appeal that the district court's ex parte consideration of affidavits during the course of the suppression hearing violated his constitutional rights. We disagree and affirm.
 
 I.
 
 2
 Boyd was arrested, then indicted on federal charges, after Officer Harding of the Baltimore Police Department stopped him, conducted a weapons frisk, and found a gun in his waistband. In conducting the stop and frisk, Harding was acting upon information provided by a confidential informant and relayed to him by Officer Sieracki. Boyd moved for suppression of the gun, and, prior to the suppression hearing, filed a subpoena in an attempt to obtain more information about the confidential informant. The Government moved to quash the motion on the basis that disclosing the requested information would make it impossible to guard the informant's identity. At that point in time, the Government did not intend to call the informant as a trial witness. The court determined that the information sought by Boyd should be submitted to the court by way of sealed affidavits in order to allow the court to make an ex parte determination about whether further disclosure was necessary. Two affidavits, one from Sieracki and one from the informant, were thereafter submitted to the court.
 
 
 3
 The suppression hearing then commenced and Sieracki testified that the informant, with whom he had reliable dealings in prior unrelated cases, called him on the day of Boyd's arrest and told him that she had seen Boyd in the area of Dallas and Federal Streets in Baltimore within the past fifteen minutes, that Boyd was likely headed toward the area of Preston and Bond Streets, that he was carrying a gun, and that he was about to rob someone in order to obtain money for a drug purchase. She described Boyd to Sieracki as a sixfoot, one hundred fifty-pound black male in his early thirties with facial hair, who was wearing a three-quarter length blue jacket, blue jeans, a black hood with a black baseball cap, and blue suede shoes. Sieracki immediately radioed this information to Harding. Sieracki testified that the informant's basis of knowledge was "personal," but refused-over defense counsel's objections-to reveal more details about the informant's basis of knowledge for fear of disclosing the informant's identity.
 
 
 4
 Harding then testified that upon receiving Sieracki's call, he spotted someone walking in the area identified by the informant who met the informant's description exactly, with the exception of the baseball cap. Harding drew his gun and asked the suspect (who proved to be Boyd) to stop; he then conducted a pat-down search, immediately felt a large hard object in Boyd's waistband, and retrieved a loaded gun. He arrested Boyd for violating state gun control laws, and a federal indictment under § 922(g) followed.
 
 
 5
 On the second day of the suppression hearing, the court announced that it had reviewed the sealed affidavits submitted by Sieracki and the informant and determined that the information contained therein did not warrant disclosure. Boyd then moved, unsuccessfully, to strike Sieracki's earlier statement that the informant spoke from her personal knowledge, on the basis that the court's refusal to allow more extensive cross-examination on this topic deprived Boyd of his right of confrontation; alternatively, Boyd argued that Sieracki's account constituted impermissible hearsay. At the conclusion of the hearing, the district court denied the motion to suppress, relying on the information revealed to the court through the affidavits. However, the court also ruled that denial of the motion to suppress was warranted even without considering the affidavits, on the basis of other evidence presented at the hearing.
 
 
 6
 At the subsequent trial, Boyd attempted to advance a justification defense, asserting that the gun found on his person actually belonged to a friend who had lost it during a fight; Boyd allegedly picked it up and placed it in his waistband out of an abundance of concern for the public's safety. To rebut this defense, the government decided to call the informant to the stand and provided Boyd with a copy of her sealed affidavit several hours before the informant began her testimony. The informant, revealed to be a personal acquaintance of Boyd's, testified that Boyd was staying in her house with several others just prior to his arrest, that she observed the clothes he was wearing and the gun in his waistband as he left the house on the day of the arrest, that she recognized the gun as one Boyd had in his possession on other occasions, and that Boyd stated that he was going out to get some drugs and would hurt someone in the process, if necessary. After Boyd left, she called Sieracki, because she believed someone might in fact get hurt.
 
 
 7
 The jury ultimately returned a verdict of guilty, and a sentence of 210 months was imposed, with three years of supervised release. This appeal followed.
 
 II.
 
 8
 Boyd argues on appeal that the trial court's ex parte consideration of the affidavits from Sieracki and the informant during the course of the suppression hearing violated his Fifth and Sixth Amendment rights. His Fifth Amendment rights were violated, Boyd argues, because the ex parte procedures adopted by the court deprived him of information about the informant's basis of knowledge and consequently prevented him from fully litigating his Fourth Amendment claim. Those same procedures allegedly violated his Sixth Amendment rights by depriving him of effective assistance of counsel, confrontation, and a public trial. We review the district court's decision to consider the affidavits ex parte for abuse of discretion or constitutional error. United States v. Anderson, 509 F.2d 724, 730 (9th Cir. 1974), cert. denied, 420 U.S. 910 (1975). We review the suppression decision itself to determine whether the evidence presented to the district court provided a substantial basis for the court's finding of no Fourth Amendment violation. Massachusetts v. Upton, 466 U.S. 727, 732-33 (1984).
 
 
 9
 Even without considering the challenged affidavits, we find that the suppression hearing testimony of Sieracki and Harding adequately supported the district court's denial of Boyd's motion to suppress. To establish the presence of a reasonable suspicion of criminal activity sufficient to support an investigatory stop under Terry v. Ohio, 392 U.S. 1 (1968), some objective level of justification is required, but the evidence need not rise to the level needed to support a finding of probable cause. United States v. Sokolow, 490 U.S. 1 (1989); United States v. Gooding, 695 F.2d 78 (4th Cir. 1982). A totality of the circumstances test controls the suppression decision. Illinois v. Gates, 462 U.S. 213, 230-41 (1983); United States v. Cortez, 449 U.S. 411, 417-18 (1981).
 
 
 10
 It is now well established that informant information may provide the sole basis for an officer's reasonable suspicion where that information carries with it some indicia of reliability. Alabama v. White, 496 U.S. 325 (1990); Adams v. Williams, 407 U.S. 143 (1972). Thus, in White, where the police received an anonymous telephone tip that White would be leaving a particular apartment in a particular car, that she would be going to a particular motel, and that she had cocaine in her possession, the Supreme Court held that the officers' stop of White along the route indicated was valid under Terry, even though the information provided was not entirely verified and the informant was unknown. 496 U.S. at 331-32. Similarly, in Adams, the Court found that unverified information from a known informant to the effect that a person seated in a nearby vehicle was carrying narcotics and had a gun around his waist was adequate to support the officer's investigatory stop of that person and immediate retrieval of the weapon from the location indicated by the informant. 407 U.S. at 14647.
 
 
 11
 When measured against these precedents, we have no difficulty finding that the investigatory stop of Boyd was valid. Sieracki testified that he was well acquainted with the informant through fifteen prior cases where she had provided reliable information. He then recounted the details about Boyd's appearance, location, destination, and probable conduct which, when considered in combination, left little room for speculation or mistake. The level of detail related by Sieracki was self-verifying evidence of the informant's personal knowledge. Given the totality of the circumstances as described at the suppression hearing, denial of Boyd's motion to suppress was clearly appropriate, and any error created by ex parte consideration of additional evidence via sealed affidavits must be deemed harmless, particularly when the content of those affidavits and the informant's identity were later revealed at trial. Young v. Maryland, 455 F.2d 679 (4th Cir.) (harmless beyond reasonable doubt standard), cert. denied, 407 U.S. 915 (1972).
 
 
 12
 Even if the information contained in the affidavits had been neces- sary to determine the motion to suppress, we would discern no abuse of discretion or constitutional error. The Supreme Court expressly held in McCray v. Illinois, 386 U.S. 300 (1967), that an informant's identity may be guarded from disclosure without impinging on the rights afforded a defendant by the Fifth and Sixth Amendments. Ex parte consideration of evidence or testimony concerning a confidential informant is a widely-used procedure which allows the court to balance two conflicting needs that arise in cases such as this: the need to protect the identity of informants and the testimonial privilege tra- ditionally afforded them, and the need to guard against police perjury. E.g., United States v. Moore, 522 F.2d 1068, 1072-73 (9th Cir. 1975), cert. denied, 423 U.S. 1049 (1976). In light of these competing concerns, we find nothing unusual about the procedures employed here .* For the foregoing reasons, we affirm the district court's denial of Boyd's motion to suppress. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Boyd attempts to analogize this case to the situation presented in Waller v. Georgia, 467 U.S. 39 (1984), where a trial court's closure of an entire seven-day suppression hearing for purposes of protecting two and one-half hours worth of testimony was deemed excessive. This is not such a case. With the exception of Sieracki's assertion of a testimonial privilege to protect the informant's identity, Boyd's entire suppression hearing was open and public. As we have stated earlier, suppression was properly denied based on the testimony adduced at the public portions of the hearing. Boyd's remaining claim that the procedures adopted by the district court deprived him of effective assistance of counsel is meritless on its face. Strickland v. Washington, 466 U.S. 668 (1984)