Steve **WILSON**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17733.

Court of Criminal Appeals of Oklahoma.

March 28, 1973.

Wayne Hagle, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., and Fred H. Anderson, Asst. Atty. Gen., and Robert Dennis, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, Steve Wilson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Case Number CRF–72–9, for the offense of Robbery With Firearms, After Former Conviction of a Felony; his punishment was fixed at ninety-nine (99) years and one (1) day imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, John Strong testified that on January 1, 1972, he was employed at the Shop-N-Go Convenience Store in Edmond. At approximately 1:30 a. m., a negro male wearing a ski cap over his head, appeared with a shotgun and said, "Open the door and get on the floor." (Tr. 27) Two other customers, Jack Risdon and Robert Bocher,

were also in the store. He opened the cash register and defendant took approximately $80.00. Defendant also took his wallet which contained approximately $8.00. His wallet was subsequently returned to him by the Edmond Police Department.

Robert Bocher testified that he was in the Shop-N-Go Store on the morning in question. A black negro male wearing a grayish-brown overcoat, black stocking cap, blue and white houndstooth slacks, entered the store with a shotgun and told him and the clerk to get on the floor. The man removed the money from the cash register. Jack Risdon, who had been in the back of the store, walked up and the robber asked Risdon and the clerk for their wallets. He, Risdon, and the clerk lay down on the floor at the robber's order. While on the floor, he observed the pants and shoes that the subject was wearing. The subject left the store traveling in a northerly direction. Risdon called the police and when they arrived, he and Risdon accompanied the police officers. The officers received a call over the radio and they proceeded to a location on the Broadway Extension. The defendant was still wearing the same slacks.

Jack Risdon testified that he was in the store with Robert Bocher at approximately 1:30 in the morning. He went to the back of the store to look at some sandwiches and when he returned to the front, he observed a black male robbing the store and Bocher and Strong were lying on the floor. The robber took his wallet and ran out of the store. He called the police and gave a description of the robber. When the police unit arrived at the store, he and Bocher accompanied the police officers. They proceeded to a stopped car on South Broadway. The officers searched the vehicle and recovered his wallet.

Harry Wakefield testified that on January 1, 1972, he was employed as Chief of Police of Edmond. He received a report of a robbery at the Shop-N-Go Store at approximately 1:32 a. m. The suspect was described as a black male wearing a black ski mask with a brown topcoat, brandishing a .

sawed-off shotgun. At approximately 1:40 a. m., he observed a gray 1964 Cadillac traveling south, being driven by a black male. He testified that to his knowledge, there were no black people living in Edmond. The Cadillac was traveling at an extremely low rate of speed and the driver was wearing a golf cap pulled down on the left side of his head. He stopped the car and ordered the driver, whom he identified in court as the defendant, to get out of the car and clasp his hands behind his head. Bocher and Risdon arrived at the scene with three other police officers. After Risdon identified the trousers the defendant was wearing, he placed the defendant under arrest and advised him of his *Miranda* rights. The defendant's car was searched and a brown paper sack containing approximately $81.00, two wallets, a black ski mask, a brown topcoat and a sawed-off shotgun were found in the trunk. The wallets belonged to John Strong and Jack Risdon.

The sole proposition asserts that the court erred in failing to sustain defendant's motion to suppress the evidence obtained by the police officers in the search made of defendant's vehicle. Prior to the trial, the trial court conducted an evidentiary hearing wherein Chief Wakefield testified as to the arrest and subsequent search. At the conclusion of the evidentiary hearing, the trial court stated:

"This is a close question in this case. The Court finds the following facts. First, the arresting officer knew an armed robbery had been reported and that it had reportedly been committed by a black man. Secondly, it was one-thirty A.M. on the morning of January 1, 1972, or thereabouts when the officer first saw the defendant's automobile. Third, the automobile of the defendant was coming from the direction of the place where the alleged robbery had been reported. Fourth, the driver of the vehicle was black. Fifth, the officer knew of no blacks living in Edmond. Sixth, the car was going unusually slow considering the hour that it was of the morning. Seven, the driver had a golf hat pulled down apparently· trying to hide his face.

"The Court based on these findings further finds the arresting officer did have reasonable cause to believe the felony had been committed by the driver of the automobile. Under authority of 395 Pacific 2nd 350, once the defendant had been arrested the identification of defendant's trousers and shoes by purported victims gave the officer the right to search the vehicle in which the defendant had been apprehended for the items in the robbery and the weapon." (Tr. 23–24)

We concur with the trial court's findings. Officer Wakefield had reasonable cause to believe the defendant had committed a felony when he stopped him. After Bocher positively identified the defendant's trousers, Chief Wakefield had probable cause to believe that the automobile contained the fruits and instrumentalities of the crime. We thus conclude that under the existing exigent circumstances, the officers were acting lawfully in searching the vehicle without a warrant. The judgment and sentence is accordingly affirmed.

BLISS P. J., and BRETT, J., concur.