Michael J. HARRIGAN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–915.

Court of Criminal Appeals of Oklahoma.

June 22, 1977.

John E. T. Ivester, Ivester, Ivester & Ivester, Sayre, for appellant.

Michael Harrigan, pro se.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

OPINION

PER CURIAM:

Appellant, Michael J. Harrigan, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Beckham County, Case No. CRF–76–11, for the offense of Attempted Robbery with a Dangerous Weapon, in violation of 21 O.S.Supp.1973, § 801. His punishment was fixed at ten (10) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Nettie Connor testified that on February 26, 1976, she was working in her liquor store in Elk City; that at approximately 7:30 p. m. the defendant and a female, later identified as Melinda Kukuk, came into the store. Defendant asked for a certain type liquor. Upon being advised that she did not stock that type, they left. They re-entered the store shortly thereafter and asked for a fifth of "Seven Crown." After obtaining the requested whiskey, Mrs. Connor turned around and defendant was standing directly behind her. Defendant said, "This is a holdup." She replied, "Oh no." Defendant stated, "Oh, yes." He then pulled a knife from his shirt and proceeded toward her. She told defendant to take the money from behind the counter and she ran out the door. She screamed for her husband who was working at his bait shop next door. She identified State's Exhibit No. 1 as a butcher knife defendant used and State's Exhibit No. 2 as the coat defendant was wearing.

Jim Don Connor testified that he was working at his bait shop, located twenty-five feet west of the liquor store, on the evening in question. He observed a 1962–64 bluish-green car pull up behind the liquor store. A man and a woman got out of the vehicle and went into the store. Shortly thereafter he heard his wife scream, "Oh, Jim they're robbing me." He ran outside and observed the man and woman going out the front door of the liquor store. They got into their car and drove away with their lights out. He followed them in his vehicle and attempted to get the tag number. The woman driving the car slammed on her brakes and he ran into the back of the vehicle. He continued to follow them and observed a coat thrown out of the car. They pulled into the Safeway parking lot and stopped. Defendant jumped out of the car and asked why he was following them. Connor replied, "You know what I'm following you for. You tried to rob our liquor store." Defendant started cussing and said, "Well, I'm leaving." Connor attempted to restrain defendant until the police arrived. Denny Eslin drove up and Connor asked him to call the police. Defendant got back into the car and they drove away. They stopped behind a car at a red light and the police arrived at the scene. After the defendant was handcuffed, the police officer asked him to retrieve the coat Connor observed thrown from defendant's car.

Denny Lee Eslin testified that he observed Jimmy Connor chasing defendant's car. He later saw Connor's car in the Safeway parking lot. Connor was attempting to keep the defendant from getting into his car. He called the police upon Connor's request.

Officer Joe McLerran testified that he received a radio bulletin concerning a hold-up at the Vieth Package Store. The bulletin contained a description of a car and stated that it might be at the Safeway parking lot. He proceeded to the location and observed a car matching the description proceeding north. He parked his police unit and directed the defendant's car to pull over to the curb. Jimmy Connor arrived and stated, "This is the two right here." He placed the defendant and his female companion under arrest. Mrs. Connor arrived and asked him if he had found the weapon. He looked under the front seat of defendant's car and found State's Exhibit No. 1, the butcher knife.

For the defense, the defendant testified that on February 26, 1976, he was in the

process of moving to Reno, Nevada with Melinda Kukuk. They had numerous household utensils in the back of the car. They stopped at the liquor store to purchase a sweet liquor. They returned to their car and then decided to buy another brand of liquor. He asked for a bottle of "Seven Crown." He reached into his pocket to pay for the bottle and Mrs. Connor said, "Oh, please don't kill me. The money is behind the counter." She ran out of the store and he became frightened and ran after her. He denied having a knife and denied attempting to rob the store. Connor started chasing them. They attempted to stop and Connor ran into the back of their car. He threw his jacket out trying to "blind his windshield." They stopped at the Safeway parking lot to find out why Connor was chasing them. Connor struck him several times. He informed Connor that he was going to the police department and file charges against him for assault and battery. They left the parking lot and pulled over when they observed the police car.

■ The sole assignment of error raised by defendant's court-appointed counsel, is that the trial court erred in allowing the State to introduce into evidence the knife and coat, in that the same were obtained by an unlawful search and seizure. We must disagree. We would first observe that the coat was not obtained by a search and seizure. The evidence was uncontroverted that the coat was thrown from the defendant's car and was found on or near a public street. We have repeatedly held that where the evidence is not concealed, but in open view of an officer, who has the right to be in a position to see the same, this does not constitute a search. See *Reynolds v. State*, Okl.Cr., 511 P.2d 1145 (1973) and *Bonham v. State*, Okl.Cr., 507 P.2d 1336 (1973).

■ We would next observe that Officer McLerran had probable cause to arrest the defendant. The officer received a radio bulletin giving a description of the suspect's vehicle and its probable location. The officer proceeded to that location and observed the vehicle. He stopped the car, whereupon Jimmy Connor advised him that "this is the two right here." The defendant was placed under arrest, handcuffed and placed in the police unit. Mrs. Connor arrived at the scene and asked him if he had found the weapon. He, thereupon, looked in defendant's car and found the knife under the front driver's seat. In dealing with a similar assignment of error in *Duke v. State*, Okl.Cr., 548 P.2d 230 (1976), we stated:

"The defendants further contend that the warrantless search of the automobile was unlawful. Because Officer Thomason had probable cause to arrest the defendants for the crime of armed robbery and because the robbery had occurred only a short time earlier, we find that he also had probable cause to believe that weapons and fruits of the crime could be found in the vehicle. Under the existing exigent circumstances, the officer acted lawfully in searching the vehicle without a warrant. See, *Wilson v. State*, Okl.Cr., 508 P.2d 718 (1973), and *United States v. Patterson*, 9 Cir., 492 F.2d 995 (1974), cited with approval in *Gonzales v. State*, Okl.Cr., 525 P.2d 656 (1974). The evidence discovered during the warrantless search of the vehicle was, therefore, admissible. See, *Grider v. State*, 49 Okl.Cr. 151, 295 P. 400 (1930)."

Defendant has filed a pro se Supplemental Brief. He first asserts that his arrest and the search of his vehicle were illegal. For the reasons and authorities above set forth, we are of the opinion that this assertion is without merit.

Defendant finally contends "that the trial court erred in its conclusion of law that he could not give defendant his jail time credit." Although this assignment of error is not a proper part of this appeal, we call defendant's attention to 57 O.S.Supp.1973, § 138, which provides, in part, as follows:

". . . All inmates shall be allowed as a deduction from their term of imprisonment the jail term, if any, served prior to being transported to the penitentiary pursuant to the judgment and sentence by which the inmate is committed. . . ."

In conclusion, we observe that the record is free of any error which would cause reversal or justify modification. The judgment and sentence is accordingly, AFFIRMED.