**UNITED STATES of America, Plaintiff–Appellee,**

v.

**CHAN YU–CHONG, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**MEN–SING LOO, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**SUI–MAN TSE, Defendant–Appellant.**

**Nos. 89–30355, 89–30366 and 89–30360.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1990.

Decided Dec. 6, 1990.

Jo Ann Oliver, Asst. Federal Public Defender, Seattle, Wash., for defendant-appellant Chan Yu–Chong.

Tim McGarry, Myer & Fluegge, Seattle, Wash., for defendant-appellant Men–Sing Loo.

James S. Kempton, Seattle, Wash., for defendant-appellant Sui–Man Tse.

Ronald J. Friedman, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before SCHROEDER, FLETCHER and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Chan Yu–Chong, Men–Sing Loo, and Sui–Man Tse appeal their convictions and sentences. Loo and Tse dispute the constitutionality of the sentencing scheme of 21 U.S.C. § 841(b)(1)(A) as applied to them. Chan argues that section 841 does not apply to him as a matter of statutory interpretation. Loo claims that his right to a fair trial was violated by the government's comment on his failure to testify and by the introduction of evidence of prior criminal activity by him.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231 (1988). We have jurisdiction pursuant to 28 U.S.C. § 1291 (1988). The notices of appeal were properly filed within ten days of the district court's judgment and commitment, pursuant to Fed.R.App.P. 4(b).

We affirm.

## FACTS

In late February of 1989, the Drug Enforcement Administration's informant, Tommy Yuen, began acting as a liaison between Loo and a California heroin buyer. No sale occurred, apparently because of a disagreement about price. In mid-April, Loo introduced Yuen to Tse, a supplier from New York with twelve pounds of heroin to sell, and asked Yuen to contact the California buyer. Yuen was unable to do so, but the DEA decided to continue its sting operation by having a DEA agent pose as an associate of the California buyer. Negotiations for a sale were conducted in various meetings and telephone calls, most of which were recorded or videotaped by the DEA. A sale of three units of approximately 700 grams each at a price of $105,000 per unit was agreed to, and the parties arranged to meet at the Heritage Inn in Great Falls, Montana. On May 11, Tse, Loo, and Chan delivered a package containing three units of heroin to Yuen and the agent in Yuen's room and were arrested after negotiations about price and purity. The sale was videotaped by the DEA.

In its opening statement at trial, the government referred to the failed February negotiations between Loo and the California buyer. Counsel for Loo objected and the trial court overruled his objection, stating that it would permit the evidence as relevant background material. DEA agent Madonna testified that he knew of Loo before beginning the investigation which gave rise to Loo's indictment. Defense counsel's objection was sustained and the jury was instructed to disregard Madonna's statement. During his cross examination, DEA informant Yuen, in response to a question posed by Chan's counsel, volunteered that Loo had helped him acquire a firearm. Counsel objected and the court ordered the answer stricken and gave the jury a curative instruction. In its closing rebuttal argument, the government stated:

> Mr. Leen in his questioning of witnesses, specially Mr. Yuen, made clear at the beginning what the defense would be, that basically was an attack on the confidential informant Mr. Yuen. Ask yourself why he does that. Why is the primary focus of the defense on Mr. Yuen? Could it be because they have nothing to say in their own defense?

Counsel for Loo objected and the court ordered the jury to disregard that portion of the government's argument and issued a lengthy curative instruction. At the close of the trial, counsel for Loo made a motion for a mistrial, which was denied.

The three defendants were sentenced based upon the total weight of the delivered material—approximately 2000 grams. The defendants argue that 82.4 grams (4 percent) of the material consisted of lumps of heroin with an average purity of 74 percent and that the remainder, approximately 1920 grams (96 percent), consisted of an unidentified substance, possibly talcum powder. The DEA chemist who analyzed the seized material testified that the material was composed of a mixture of hard lumps similar to very caramelized brown sugar and a fine substance similar to flour or white sugar. She also testified that to facilitate her analysis of the purity of the seized material, she separated the lumps of heroin from the unidentified substance with a metal sieve.

## DISCUSSION

### I. *Statutory Interpretation of "Mixture or Substance"*

Chan contends that, as a matter of law, the heroin and unidentified white powder did not constitute a mixture or substance for purposes of 21 U.S.C. § 841(b) and Sentencing Guidelines § 2D1.1 because of its heterogeneous nature and its easy, mechanical separability into the two substances. He recognizes that the heroin's low purity level does not preclude it from falling within the statute or guidelines. The physical characteristics of the seized material are not in dispute; thus, the issue is solely one of statutory interpretation.

The relevant portion of section 841(b) provides:

(1)(A) In the case of a violation of subsection (a) of this section [distribution of a controlled substance] involving—(i) 1 kilogram or more of a mixture or substance containing a detectable amount of heroin ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life....

21 U.S.C. § 841(b) (1988). Guidelines section 2D1.1 assigns a base offense level of 32 (121 to 151 months) for section 841(b) convictions involving at least one but less than three kilograms of a mixture or substance containing a detectable amount of heroin. United States Sentencing Comm'n, *Guidelines Manual*, § 2D1.1(c) & n. * (Nov. 1989). A Guidelines Application Note states that "mixture or substance" in section 2D1.1 "has the same meaning as in 21 U.S.C. § 841." U.S.S.G. § 2D1.1 comment. (n. 1). "Mixture or substance" is not defined in section 841.

■ A combination of a diluent agent and a drug sold in diluted form is a mixture or substance within the meaning of 841(b). *See United States v. Williams*, 894 F.2d 208, 214–15 (6th Cir.1990); *United States v. Baker*, 883 F.2d 13, 14–15 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989); *United States v. Stewart*, 878 F.2d 256, 259 (8th Cir.1989); *United States v. Rojas*, 868 F.2d 1409, 1409–10 (5th Cir.1989); *United States v. Smith*, 840 F.2d 886, 889 (11th Cir.), *cert. denied*, 488 U.S. 859, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988).

■ Words used in a statute are presumed to have their ordinary meaning unless a special usage is evident from the statutory scheme. *See Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). The definition of "mixture" does not imply or require homogeneity. *See Random House Dictionary* 1234 (2d ed. 1987). Even if the powdery, unidentified substance and the lumps of heroin would have to be made more homogenous in texture before final sale to the consumer, the seized substance was a drug product moving through the chain of distribution in the manner envisioned by Congress. *See* H.R.Rep. No. 845, 99th Cong., 2d Sess. Pt. 1 at 11–12 (1986) (statute intended to institute a hierarchy of sentencing based upon position in the manufacturing and distribution chain). Chan has not argued, and there is no evidence in the record to suggest, that the unidentified substance was not consumable by the ultimate user, e.g., that it was poisonous or that it would not dissolve as necessary for its ultimate injection. *See United States v. Touby*, 909 F.2d 759, 772–73 (3rd. Cir.1990).

### II. *Constitutionality of Sentencing Scheme Based Upon Quantity Rather Than Purity*

■ Loo and Tse argue that the mandatory minimum sentence imposed on them by section 841 denies them due process and equal protection by focusing solely on quantity and disregarding purity. We have addressed this argument. In *United States v. Savinovich*, 845 F.2d 834 (9th Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988), we held that the mandatory penalty imposed by section 841(b) did not deny Savinovich equal protection, despite the fact that "a mere 'street dealer' possessing cocaine which had been 'cut' several times may serve a minimum mandatory sentence greater than a manufacturer possessing a smaller but purer quantity of the drug." *Id.* at 838–39; *see*

also *United States v. Hoyt*, 879 F.2d 505, 512, amended by 888 F.2d 1257 (9th Cir. 1989); *United States v. Kidder*, 869 F.2d 1328, 1335 (9th Cir.1989); *United States v. Klein*, 860 F.2d 1489, 1500 (9th Cir.1988). The punishment scheme is rationally related to Congress's desire to prevent both wholesale and retail distribution of illegal drugs. Congress is not required " 'in every instance to order evils hierarchically according to their magnitude and to legislate against the greater before the lesser.' " *Savinovich*, 845 F.2d at 839 (quoting *United States v. Holland*, 810 F.2d 1215, 1219 (D.C.Cir.), cert. denied, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987)).

The fact that the heroin was diluted below street quality does not provide a basis for distinguishing *Savinovich*. Loo and Tse are within the class of wholesalers Congress intended to punish more severely as more dangerous to society. They have made no showing that they are farther removed from the drug's source than the wholesalers Congress envisioned, that the substance sold was without substantial value, or that it was not consumable by the ultimate user. Although Loo and Tse assert that they are being punished much more harshly than a major trafficker charged with an offense involving 82.4 grams of pure heroin, this is neither controlling nor necessarily true. The Guidelines specifically provide for upward departures in cases of small amounts of pure heroin. *See* U.S.S.G. § 2D1.1 comment. (n. 9). Further, there are a variety of charges that may be brought against major traffickers who are apprehended with small quantities. *See United States v. Marshall*, 908 F.2d 1312, 1322–23 (7th Cir.1990) (en banc).

III. *Prosecution's Comment on Loo's Failure to Testify*

In his closing argument, the prosecutor said, "Why is the primary focus of the defense on Mr. Yuen? Could it be because they have nothing to say in their own defense?" Based upon these questions, Loo argues that the prosecution impermissibly commented on his failure to testify and therefore violated his fifth amendment privilege, *see Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965), and that the trial court erred in not granting his motion for a mistrial.

■ Reversal is not required because of a single, isolated prosecutorial comment which may arguably be related to the defendant's failure to testify if the comment does not stress an inference of guilt from silence as a basis for conviction and is followed by a curative instruction. *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987) (citing *United States v. Soulard*, 730 F.2d 1292, 1307 (9th Cir.1984) and *United States v. Kennedy*, 714 F.2d 968, 976 (9th Cir.), cert. denied, 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 704 (1983)). "A prosecutor may call attention to the defendant's failure to present exculpatory evidence if those comments do not call attention to the defendant's failure to testify and are not of such a character that the jury would naturally and necessarily take them to be a comment on the failure to testify." *United States v. Lopez*, 803 F.2d 969, 973 (9th Cir.1986), cert. denied, 481 U.S. 1030, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1987) (citing *United States v. Bagley*, 772 F.2d 482, 494 (9th Cir.1985), cert. denied, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986), and *Soulard*, 730 F.2d at 1306).

■ The facts are similar to those of *United States v. Wasserteil*, 641 F.2d 704 (9th Cir.1981). In *Wasserteil*, we held that comments in the prosecutor's rebuttal argument did not violate the defendants' right to remain silent: " 'I asked all the defendants, invited them in my opening argument, to please explain to you how this legitimate business transaction worked in the hotel in Los Angeles, and the transportation of the suitcases.... Did you hear an explanation from them? I invited them to give you one.' " *Id.* at 709. We recognized that this language could be interpreted as directed at the defendants' lack of testimony, but found that it was unlikely that the jury would interpret it in this manner, since, in his *closing* argument, the prosecutor had asked the *defense* rather

than the defendants to give a benign explanation of the transaction. *Id.* There is less danger of improper suggestion in the present case than in *Wasserteil* because the prosecutor's remark in this case specifically refers to the defense rather than to the defendant. *See also United States v. Espinosa*, 827 F.2d 604, 615 (9th Cir.1987), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988).

Further, the prosecutor's comment was properly limited to a rebuttal of the defense's attempt to impeach Yuen. In *United States v. Kessi*, 868 F.2d 1097, 1106 (9th Cir.1989), we upheld the defendant's conviction despite comments by the prosecutor that the defendant's strategy was " 'to put another person on trial and to keep [the defendant] as much in the background as possible' " and that the defendant's post-traumatic stress syndrome defense was fabricated. We found that the prosecutor's comments were not improper rebuttal and did not constitute a comment on the decision not to testify, but were instead a comment on the failure to present exculpatory evidence. *Id.; see also Bagley*, 772 F.2d at 494; *Kennedy*, 714 F.2d at 976 & n. 2.

In spite of these holdings, we caution prosecutors that it is risky indeed to attempt to "walk the line."

IV. *Introduction of Evidence of Prior Conspiracy and Gun Sale*

Loo also contends that he was deprived of a fair trial as a result of the introduction of evidence of (1) a prior conspiracy to distribute heroin, (2) a DEA agent's prior knowledge of him, and (3) his involvement in the sale of a gun. Evidentiary rulings of the trial court are reviewable for an abuse of discretion, *United States v. Catabran*, 836 F.2d 453 (9th Cir.1988), as is the denial of a motion for a mistrial, *United States v. Segal*, 852 F.2d 1152, 1155 (9th Cir.1988). Loo's claim lacks merit. The "prior conspiracy" evidence was in actuality evidence of the beginning of the conspiracy charged. Agent Madonna's affirmative answer to the question of whether he knew of Loo before the present investigation is harmless error in light of the overwhelming evidence of Loo's guilt, as is informant Yuen's implication of Loo in his own possession of a firearm. Curative instructions were given in both instances and the prejudicial effect of the evidence is not so great as to override the presumption that the jury followed the instruction in each case. *See United States v. Brady*, 579 F.2d 1121, 1127 (9th Cir.1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979).

AFFIRMED.