967 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jay Dale NORRIS, Defendant-Appellant.
 No. 91-10356.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 14, 1992.
Decided July 8, 1992.
 
 Before FLETCHER, POOLE and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Jay Dale Norris was convicted of one count of conspiracy to possess marijuana with intent to distribute and acquitted of one count of possession of marijuana with intent to distribute. He appeals (1) the district court's denial of his motion to suppress, and (2) the district court's denial of his motion for mistrial based on prosecutor's comments during closing argument. We affirm.
 
 I. Motion to Suppress
 
 3
 Norris' conviction arose from surveillance at the San Miguel Gate, an unmarked, unmanned opening in the fence between the United States and Mexico, located in the desert south of Sells, Arizona, and within the boundaries of the Tohono O'Odham Reservation. Tribal lands extend into Mexico, and there is some uncontrolled traffic through the gate for legitimate purposes.
 
 
 4
 The events of the morning of November 7, 1990, based primarily on observations by Customs Officer Lambert Cross while conducting surveillance at the San Miguel gate, are best explained in chronological order:
 
 
 5
 8:55 am--A red hatchback car (later stopped with Norris at the wheel) travelled ten or twenty yards into Mexico, and then returned to the United States. Officer Cross considered this maneuver to be a decoy often used by drug traffickers to pull surveillance officers away from their positions.
 
 
 6
 9:55 am--A blue pickup truck (later determined to belong to Norris' co-defendant Ceasar Juan) entered Mexico and drove out of sight.
 
 
 7
 10:25 am--Norris' car crossed into Mexico and traveled in the same direction as Juan's truck.
 
 
 8
 10:35 am--A blue car (later determined to belong to Frances Kirmen) entered Mexico and traveled in the same direction as the two other vehicles. These were the only vehicles observed crossing through the gate that morning.
 
 
 9
 10:43 am--Norris' car returned to the United States and drove north on Federal Route 19.
 
 
 10
 10:53 am--Kirmen's car did the same.
 
 
 11
 10:54 am--Juan's truck returned to the United States. Officer Cross radioed descriptions of the cars to agents further north, and then pursued Juan's truck. As Officer Cross attempted to stop it, the driver jumped from the truck while it was still moving and escaped on foot. The truck contained 212 pounds of marijuana.
 
 
 12
 Approximately 11:00 am--Knowing that marijuana had been discovered in Juan's truck, Customs Officer Floyd Garcia positioned himself on Federal Route 19 approximately ten miles north of the border. He observed Kirmen's car pass Norris' car. He stopped Norris' car near milepost 14. Norris was driving, and co-defendant Paul Macias was a passenger. Officer Garcia searched the car and discovered no contraband.
 
 
 13
 11:07 am--Responding to radio reports, Customs Officer Robert Antone stopped Kirmen's car. The trunk contained 261 pounds of marijuana.
 
 
 14
 At a suppression hearing on April 2, 1991, the district court denied the motions of defendants Norris, Macias and Juan to suppress evidence seized at the time of the stops. Norris appeals, arguing that the district court erred by refusing to "suppress the stop," i.e., to suppress evidence that Norris was driving the red car.
 
 
 15
 The lawfulness of a stop or search is a mixed question of law and fact reviewed de novo. United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989). "An officer may make a brief investigatory stop of a moving vehicle if, under the totality of the circumstances, the officer is aware of articulable facts leading to a reasonable or founded suspicion that the person stopped is engaged in criminal activity." United States v. Corral-Villavicencio, 753 F.2d 785, 789 (9th Cir.1985).
 
 
 16
 The government points to enough articulable facts to support a finding of founded suspicion in this case. Norris' car was seen turning around a few yards past the border, a maneuver that Officer Cross recognized as a frequently used drug trafficker's decoy. The three vehicles then entered and left Mexico in close proximity to each other. They were the only vehicles using this isolated road on the morning in question. At the time Norris was stopped, all officers involved knew that Juan's truck carried marijuana. The other cars were traveling in the familiar " 'lead car-load car' modus operandi, whereby two cars travel together during a smuggling venture with the first car operating primarily as a scout car." United States v. Larios-Montes, 500 F.2d 941, 943 (9th Cir.1974), cert. denied, 422 U.S. 1057 (1975). See also United States v. Vital-Padilla, 500 F.2d 641, 643 (9th Cir.1974); United States v. Figueroa-Espinoza, 454 F.2d 590, 591 (9th Cir.1972). Viewing these facts together, and taking account of the officers' training and experience in drawing inferences from suspicious conduct, United States v. Cortez, 449 U.S. 411, 418 (1981), we conclude that there was founded suspicion for the stop of Norris' car.
 
 
 17
 Norris argues in his brief that the stop violated the Gadsden Treaty, which formalized the accession of the lands involved in this case. The treaty incorporated certain provisions of the Treaty of Guadalupe Hidalgo, which in relevant part insures that persons living on the American side of the border after accession shall enjoy "all the rights of citizens of the United States, according to the principles of the constitution." Because the stop was constitutional, the treaty was not violated.
 
 
 18
 Norris' argument that the stop also violated a Presidential Proclamation issued by Theodore Roosevelt, which designated a sixty-foot strip of land along the US/Mexico border as a "public reservation" but excepted traditional crossings, fails for the same reason.
 
 II. Motion for Mistrial
 
 19
 Norris, Macias and Juan were tried jointly before a jury for conspiracy to possess marijuana and for possession of marijuana with intent to distribute. Kirmen was the star witness for the prosecution. She testified in part that Juan offered her $1000 to "run a load" across the border for him, and that Norris was present at the time of that offer. Norris and Juan did not testify. The jury convicted Juan of both counts, acquitted Macias of both counts, and convicted Norris of conspiracy only.
 
 
 20
 At trial, the prosecutor delivered the first closing argument. Counsel for Macias, Norris and Juan then made their own closing arguments. Tailored to the defenses of different defendants, these arguments stressed different evidence, but they had one common theme: attacks on the credibility of government witness Kirmen, who testified pursuant to a plea bargain. The prosecutor in rebuttal argued:
 
 
 21
 MR. MISKELL: Now, let's consider--getting back to Ms. Kirmen. Again, everybody is saying that all she is doing is testifying because of the deal. And I suggest that what you want to look at with Ms. Kirmen--if you think that might be a problem, look at what she said the day that she was arrested: No deal, no agreement. Right when she is caught she talks, and what does she say? She says Ceasar Juan and Jay Norris came to her house. No evidence was presented that contradicts that. She said Ceasar Juan said: Will you run a load of marijuana? And Jay Norris was present when she said that. Again, how can they contradict that?
 
 
 22
 MR. HIGGINS (for Norris): Your Honor, may I reserve a motion?
 
 
 23
 THE COURT: Yes.
 
 
 24
 MR. POMEROY (for Juan): I'd like to join in that.
 
 
 25
 THE COURT: All right.
 
 
 26
 ER Exhibit 7. After the rebuttal argument, counsel for Norris moved for a mistrial based on the prosecutor's alleged comment on defendants' silence. The district court denied the motion. Id. at 262.
 
 
 27
 The Fifth Amendment right against self-incrimination forbids a prosecutor from commenting on a defendant's silence. Griffin v. California, 380 U.S. 609 (1965). We review de novo the issue of whether a Fifth Amendment violation occurred. United States v. Gray, 876 F.2d 1411, 1416 (9th Cir.1989), cert. denied, 110 S.Ct. 2168 (1990). A prosecutor's statement violates the Fifth Amendment
 
 
 28
 'if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.' Reversal is compelled only 'where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction and where there is evidence that could have supported acquittal.'
 
 
 29
 Id. (citations omitted). For several reasons we do not believe any Fifth Amendment violation occurred.
 
 
 30
 The prosecutor referred to a lack of any contradiction of Kirmen's testimony. "It is permissible for the prosecutor to call attention to [a defendant's] failure to present exculpatory evidence so long as he does not comment on the decision not to testify." United States v. Kessi, 868 F.2d 1097, 1106 (9th Cir.1989). However, a prosecutor may not suggest a need for the defense to present evidence that could only be provided by the defendant. United States v. Sehnal, 930 F.2d 1420, 1425 (9th Cir.), cert. denied, 112 S.Ct. 300 (1991); Lincoln v. Sunn, 807 F.2d 805, 810 (9th Cir.1987). The prosecutor's rhetorical question in this case--"how can they contradict [Kirmen's testimony that Norris was present when Juan proposed a drug deal]?"--could be answered in many ways not requiring testimony by the defendant, including, for example, effective cross-examination or an alibi witness. "A prosecutor may properly comment upon a defendant's failure to present witnesses so long as it is not phrased to call attention to defendant's own failure to testify." United States v. Castillo, 866 F.2d 1071, 1083 (9th Cir.1988) (citations omitted). The prosecutor's comments in this case seem not to be "manifestly intended to call attention to the defendant's failure to testify, or [be] of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." Gray, 876 F.2d at 1416.
 
 
 31
 Second, the comment was part of a rebuttal to the defense attorneys' attacks on the credibility of a prosecution witness. In United States v. Chan Yu-Chong, 920 F.2d 594 (9th Cir.1990), this court declined to find a Fifth Amendment violation when a prosecutor argued as follows: "Why is the primary focus of the defense on Mr. Yuen [the government informant]? Could it be because they have nothing to say in their own defense?" Id. at 598. The thrust of the argument was the credibility of the government witness, not the silence of the defendant. See also Kessi, 868 F.2d at 1106 (not improper for prosecutor to say in closing that defendant's strategy was "to put another person on trial and to keep James Kessi as much in the background as possible").
 
 
 32
 Third, our cases recognize a distinction between comments directed at the defendant and comments directed at the defense. See Sehnal, 930 F.2d at 1424-25; Kessi, 868 F.2d at 1106; Castillo, 866 F.2d at 1083; United States v. Wasserteil, 641 F.2d 704, 709-10 (9th Cir.1981). The comments in this case were delivered after the closing arguments of three defense attorneys. The prosecutor referred to "everybody" attacking Kirmen's credibility, and "they" not being able to contradict her testimony. These comments could be directed at defense counsel or defense strategy rather than at the defendants personally.
 
 
 33
 Fourth, the challenged statements were not extensive. "Reversal is not required because of a single, isolated prosecutorial comment which may arguably be related to the defendant's failure to testify if the comment does not stress an inference of guilt from silence as a basis for conviction." Chan Yu-Chong, 920 F.2d at 598. The prosecutor did not argue that the jury should infer guilt from silence. Furthermore, after defense counsel reserved its motion, the prosecutor limited his argument to discussion of evidence actually presented.
 
 
 34
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3