47 F.3d 1177
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard VALDEZ, Jr.; Juan C. Briseno; and Kay Tanner,
Defendants-Appellants.
 Nos. 93-30404, 93-30413 and 93-30436.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 6, 1995.
Decided Feb. 24, 1995.
 
 Before: SKOPIL, HALL, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Following a jury trial, defendants were convicted of various offenses arising from their agreement to distribute cocaine. Defendants challenge both their convictions and sentences on appeal, raising claims relating to sufficiency of the evidence, admissibility of evidence, juror intoxication, improper arguments by the prosecutor, use of racial epithets, jury instructions, and sentencing. We affirm.
 
 I.
 
 3
 Tanner contends there was insufficient evidence to find her guilty of conspiracy. The evidence clearly established a conspiracy between Passi, Grothe, Shook, Valdez, Briseno, and others to transport cocaine from Los Angeles to Anchorage for distribution. "Once the existence of a conspiracy is established, evidence of only a slight connection to the conspiracy is necessary to support a conviction of knowing participation in that conspiracy." United States v. Ramos-Rascon, 8 F.3d 704, 707 (9th Cir.1993) (quotations omitted). Viewing the evidence in the light most favorable to the government, we conclude that a rational trier of fact could have found that Tanner's connection to the conspiracy was proved beyond a reasonable doubt.
 
 
 4
 Passi, Shook, and Grothe testified about Tanner's knowledge of, and involvement in, the conspiracy. An FBI agent testified that shortly after interviewing Tanner, he found a piece of paper with the names and phone numbers of drug suppliers connected to the conspiracy in the interview room. Additionally, evidence found in Tanner's house during a search connected her to the conspiracy.[1] Contrary to Tanner's assertion, the evidence in this case is far greater than that found insufficient in United States v. Vasquez-Chan, 978 F.2d 546 (9th Cir.1992), United States v. Ocampo, 937 F.2d 485 (9th Cir.1991), and United States v. Ramirez, 880 F.2d 236 (9th Cir.1989).
 
 II.
 
 5
 Tanner claims that the prosecutor impermissibly vouched for the credibility of government witnesses. We agree that the prosecutor's reference to Grothe's plea agreement in the opening statement constitutes vouching. See United States v. Necoechea, 986 F.2d 1273, 1278 (9th Cir.1993) (prosecutor's opening statement that "[the witness] has agreed to cooperate with the government, and to testify truthfully," constitutes vouching). We do not agree, however, that the prosecutor's other statements were vouching. The opening statement regarding Shook's perjury before the grand jury was a fair comment on what the prosecutor expected the trial evidence to show. His questioning of witnesses regarding their plea agreements was a proper response to credibility attacks on witnesses made by Tanner's attorney and a codefendant's attorney. See id. at 1279. Finally, the prosecutor's closing argument, that government witnesses told the truth because their testimony was corroborated, was not vouching. Prosecutors have reasonable latitude to fashion closing arguments, and may argue reasonable inferences to be drawn from the evidence. Id. at 1276.[2]
 
 
 6
 Tanner failed to object to the one instance of vouching, and accordingly, our review is for plain error. Id.; Fed.R.Crim.P. 52(b). We conclude there was no plain error. The reference to Grothe's plea agreement neither implied that the prosecutor had extra-record knowledge, nor that he had the capacity to monitor Grothe's truthfulness, and the prosecutor did not assert his personal opinion. See Necoechea, 986 F.2d at 1278. Moreover, the jury was instructed that "the existence of a plea agreement requiring a witness to testify truthfully does not mean that the testimony is in fact truthful."
 
 III.
 
 7
 All defendants contend that they were denied a fair trial by the district court's handling of a claim of juror intoxication. Clearly, the district court was not required to hear juror testimony about alcohol consumption. See United States v. Tanner, 483 U.S. 107, 117-128 (1987). We are not persuaded that Tanner is distinguishable on the ground that the jury was not yet discharged in this case. See Tanner, 483 U.S. at 117-125. We also reject defendants' claim that the district court was otherwise obligated to respond to defendants' motion prior to discharging the jury. At the time the request for an inquiry was made, the only evidence of alcohol use was the investigator's bare assertion that he smelled alcohol from the jury box. No other person in a position to observe the jury made a similar observation. In light of the weak evidence presented to the judge, and the potential for harassment of the jury, we cannot conclude that the district court's investigation of the allegations, which included an evidentiary hearing, violated defendants' rights to a fair trial.
 
 IV.
 
 8
 Tanner and Briseno argue that the district court erred in admitting a note found in a search of Valdez' residence. We need not consider defendants' arguments that the note was not authenticated and that it was inadmissible hearsay, because we conclude that any error was harmless. See Fed.R.Crim.P. 52(a).
 
 
 9
 Briseno argues that admission of the note was not harmless because it linked Tanner to the conspiracy, and the primary link between Briseno and the conspiracy was his presence at Tanner's house during a drug transaction in September 1992. We reject this argument. Even assuming that the primary link between Briseno and the conspiracy was his presence at Tanner's home in September 1992, this link was in no way dependant on Tanner's involvement in the conspiracy. Two other conspirators, Frazier and Randall, lived at Tanner's house. Other conspirators, including Shook and Passi, were also present at Tanner's house during this time. Furthermore, the government made no argument that the note tied Briseno to the conspiracy. Finally, the testimony of Shook, Passi, and Grothe made a strong case against Briseno.
 
 
 10
 In Tanner's case, any error was also harmless. First, the evidence against Tanner was sufficient even without consideration of the note. Second, the evidence was cumulative. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). The jury already heard Passi's testimony that Tanner had offered to supply cocaine to conspirators. We cannot conclude that the introduction of the note had any impact on the jury's verdict in light of the other evidence. Nor can we conclude that any error in admitting this note, combined with the one instance of vouching, requires us to reverse Tanner's conviction based on cumulative error.
 
 V.
 
 11
 Tanner and Briseno argue that they should have been allowed to play a tape recording of Passi threatening falsely to implicate two persons in this conspiracy. We reject defendants' argument. The trial judge has discretion to impose reasonable limits on cross-examination. United States v. Vargas, 933 F.2d 701, 704 (9th Cir.1991). There is no abuse of discretion where "the jury received sufficient information to appraise the biases and motivations of the witness." United States v. Feldman, 788 F.2d 544, 554 (9th Cir.1986), cert. denied, 479 F.2d 1067 (1987). Although listening to the recording may have had some impeachment value beyond that of the transcript, Passi's motivation and bias were adequately revealed through publication of the transcript and other lines of questioning. See, e.g., United States v. Guthrie, 931 F.2d 564, 568-69 (9th Cir.1991); United States v. Torres-Rodriguez, 930 F.2d 1375, 1384-85 (9th Cir.1991).
 
 VI.
 
 12
 Tanner argues that evidence of her personal drug use, and cocaine and paraphernalia found during a search of her house, was inadmissible propensity evidence. We conclude that such evidence was admissible pursuant to Federal Rule of Evidence 404(b) as evidence of Tanner's intent and knowledge.
 
 
 13
 Tanner's defense at trial was that she lacked knowledge of the conspiracy. She also disclaimed knowledge of the conspirators' involvement with drugs. Tanner further claimed that she was an innocent homeowner who did not use cocaine. The cocaine and paraphernalia found during the search are probative of her knowledge of the drug operation being run out of her house. Cf. United States v. Marsh, 894 F.2d 1035, 1038-39 (9th Cir.1989), cert. denied, 493 U.S. 1083 (1990) (ledger found in defendant's purse admissible to contradict her claim that she was not involved in her husband's drug sales). The evidence of Tanner's personal cocaine use is also probative of her knowledge. There was no error in admitting this evidence.
 
 VII.
 
 14
 Briseno and Tanner argue that it was error for the district court to deny their motion for a mistrial based on testimony by a government witness that one defendant used a racial epithet. Defendants' claims of prejudice from this statement are tenuous. Neither Briseno nor Tanner was expressly connected to the statement; they were not present when it was allegedly made, their names were not mentioned, and the witness attributed the statement to Valdez. The likelihood that the statement had any impact on the trial is small. Viewed in context, the statement was simply part of the witness' account of what occurred when she accompanied two conspirators to Los Angeles. As the government notes, the epithet was not repeated by any other witness or used by the prosecutor in closing arguments, and defendants do not point to any other racial epithet in the record. Cf. United States v. Doe, 903 F.2d 16, 19-23 (D.C.Cir.1990) (prosecutor and government witness made repeated references to Jamaicans "taking over" the drug trade; two defendants were Jamaican and the other African American).
 
 VIII.
 
 15
 Briseno challenges the district court's definition of reasonable doubt given in the jury instructions. As Briseno acknowledges, however, we addressed the same contention in United States v. Velasquez, 980 F.2d 1275, 1278 (9th Cir.1992), cert. denied, 113 S.Ct. 2979 (1993), and upheld the instruction. Contrary to Briseno's argument, the Supreme Court's recent decision in Victor v. Nebraska, --- U.S. ----, 114 S.Ct. 1239 (1994), does not require us to reexamine this instruction. Although the Supreme Court addressed the constitutionality of two jury instructions on reasonable doubt in Victor, the Court did not consider the constitutionality of the "firmly convinced" language at issue here.
 
 IX.
 
 16
 Briseno claims that the prosecutor violated his fifth amendment rights during closing arguments by commenting on his failure to testify regarding his alleged confession to Shook. He contends that there was no evidence that others were present when the alleged statement was made, and thus, the prosecutor's comment on his failure to rebut Shook's testimony amounted to a comment on his failure to testify. We reject Briseno's contention.
 
 
 17
 "It is permissible for the prosecutor to call attention to [defendant's] failure to present exculpatory evidence so long as he does not comment on the decision not to testify." United States v. Kessi, 868 F.2d 1097, 1106 (9th Cir.1989). Here, the prosecutor's argument, taken in context, is not directed at Briseno's silence. Rather, the argument is a response to the credibility attacks on Shook made by defendants. See United States v. Chan Yu-Chong, 920 F.2d 594, 599 (9th Cir.1990) (no fifth amendment violation where argument directed at the credibility of the government witness rather than the silence of defendant). See also United States v. Castillo, 866 F.2d 1071, 1083 (9th Cir.1988) (no fifth amendment violation when prosecutor's comments focused on defendant's failure to contradict evidence rather than referencing defendant's failure to testify).
 
 
 18
 Moreover, "courts will not reverse when the prosecutorial comment is a single, isolated incident, does not stress an inference of guilt from silence as a basis of conviction, and is followed by curative instructions." Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir.1987). This was the only comment related to Briseno's failure to produce evidence. It did not stress an inference of guilt from silence, but rather attempted to bolster Shook's credibility. Additionally, after Briseno objected to the prosecutor's argument, the court admonished the jury that defendants have no obligation to testify or offer any evidence, and that no inferences should be drawn based on their failure to do so. Later, the court instructed the jury a second time that defendants need not testify or present evidence to prove their innocence.
 
 
 19
 Briseno and Tanner both claim the following argument by the prosecutor violated their fifth amendment rights:
 
 
 20
 the one thing ... that neither Terry Grothe, Debbie Shook or Kapeli Passi have done ... during the course of this trial is to deny their role in this operation. They have never come before you and said, I didn't do it. Kapeli Passi tried to withdraw twice from his plea agreement.... But the one thing that he didn't do was proclaim his innocence.
 
 
 21
 Taken in context, these comments were proper rebuttal to attacks on the credibility of these witnesses made by the defense. See Chan Yu-Chong, 920 F.2d at 599. This was permissible argument.
 
 X.
 
 22
 Briseno argues that the district court erred in sentencing him by relying on drug quantity estimates provided by addict-informants, finding that he was involved with 21 kilograms of cocaine, and denying him an adjustment for being a minimal or minor participant. We reject these arguments.
 
 
 23
 a.
 
 
 24
 In calculating Briseno's base offense level, the district court relied upon drug quantity estimates provided at trial by Shook, an informant and admitted cocaine addict. Briseno claims that his due process rights were violated by the court's reliance on the testimony of Shook as well as Grothe, another addict-informant. See United States v. Safirstein, 827 F.2d 1380, 1385 (9th Cir.1987). He contends that their testimony should be subject to heightened scrutiny, and should be relied upon only if sufficient indicia of reliability are present. See U.S.S.G. Sec. 6A1.3(a) (requiring sufficient indicia of reliability). See also United States v. Beler, 20 F.3d 1428, 1435 (7th Cir.1994); United States v. Miele, 989 F.2d 659, 667 (3d Cir.1993).
 
 
 25
 We have never specifically addressed whether any special requirements accompany reliance on such drug quantity estimates. Even if added scrutiny is required, however, we would conclude that the district court adequately scrutinized Shook's estimates and found sufficient indicia of reliability. At sentencing, the district court explained at length its basis for crediting the testimony of Shook. The district court did not abuse its discretion in relying on the drug quantity estimates provided by Shook. There was no violation of Briseno's due process rights.[3]
 
 
 26
 b.
 
 
 27
 The district court found that Briseno was culpable in four cocaine transactions totalling 21 kilograms. Briseno's challenges to the findings of the court regarding the August and September 1992 transactions are without merit. Although Briseno points to some apparent contradictions in the testimony of the witnesses regarding the September transactions, the witnesses agreed that Briseno supplied at least part of the purchase price and that a total of four to five kilograms was purchased. The testimony of Shook regarding the August 1992 transaction is corroborated by a receipt for the shipment from Los Angeles to Anchorage signed by Shook. Briseno contends that only five kilos of this shipment can be attributed to him because only five were delivered to him. The entire quantity, however, was foreseeable and within the scope of his agreement with Valdez. See United States v. Becerra, 992 F.2d 960, 966 (9th Cir.1993).
 
 
 28
 The court's findings regarding the January 1991 and December 1992 transactions are not entirely accurate. The court found that in December 1992, Briseno provided Grothe with a cooler containing $100,000 for the purchase of eight kilos. The evidence shows that Grothe borrowed a cooler from Briseno, that Briseno gave Valdez approximately $90,000 for purchasing cocaine, and that this money was later put into the cooler. Thus, the court's underlying finding is inaccurate, but its ultimate conclusion--that Briseno supplied money to Valdez to carry out the eight kilogram transaction--is supported by the evidence.
 
 
 29
 The court's finding that Briseno conspired with Valdez to purchase cocaine in January 1991 may be erroneous. Shook's testimony was the only evidence of this transaction, and at trial she could not date the transaction. Any error, however, is harmless because 19 kilograms of cocaine would still be attributable to Briseno, and thus his base offense level would remain the same. U.S.S.G. Sec. 2D1.1(c)(5) (1992) (base offense level of 34 for 15-50 kilograms of cocaine). See United States v. Duarte, 901 F.2d 1498, 1501 (9th Cir.1990) (applying harmless error analysis in sentencing).
 
 
 30
 Briseno further argues that he was never present when drugs and money were transferred, and therefore, the full quantity of drugs purchased was not foreseeable or within the scope of his agreement with Valdez. See U.S.S.G. Sec. 1.B1.3, comment. (n. 2); Becerra, 992 F.2d at 966. Briseno's absence from these transactions does not compel the conclusion that the quantities purchased were not foreseeable or part of his agreement with Valdez. The record shows that for many years Valdez arranged drug transactions and Briseno supplied part of the money, the drugs were transported to Anchorage, and Valdez gave Briseno his share. In light of this arrangement, the district court did not err in finding the quantity of drugs foreseeable and within the scope of Briseno's agreement with Valdez.[4]
 
 
 31
 c.
 
 
 32
 Briseno argues that he is entitled to a downward adjustment for being either a minor or minimal participant. Adjustments for minimal or minor participation "are to be used infrequently." United States v. Gillock, 886 F.2d 220, 222 (9th Cir.1989) (per curiam). In denying a downward adjustment, the district court considered that Briseno furnished money for purchases, went to Los Angeles to help carry out drug transactions even though he was not involved in the negotiations, supervised the conduct of Grothe at times, and instructed Shook about the cocaine distribution business. We conclude that the district court did not err.
 
 XI.
 
 33
 Tanner argues that she should not have been sentenced to the mandatory minimum sentence of ten years because there was insufficient evidence that her offense involved more than five kilograms of cocaine. The evidence at trial shows that, at a minimum, Tanner knew of the conspiracy to distribute the eight kilograms of cocaine stored in her refrigerator in December of 1992. Thus, greater than five kilograms were within the scope of Tanner's agreement with the coconspirators and foreseeable to her. See Becerra, 992 F.2d at 967 n. 2.
 
 
 34
 Tanner's ten year sentence reflects the mandatory minimum for her offense. 21 U.S.C. Sec. 841(b)(1)(A)(ii). When the mandatory minimum sentence prescribed by statute is greater than the applicable guidelines sentence, the statutory minimum applies and the guideline sentence is disregarded. U.S.S.G. Sec. 5G1.1(c)(2); United States v. Williams, 939 F.2d 721, 725-26 (9th Cir.1991). Thus, because we have concluded that Tanner was properly sentenced to the statutory minimum sentence, we need not consider her arguments which relate only to the calculation of her sentence under the guidelines.
 
 XII.
 
 35
 Tanner claims that her attorney provided ineffective assistance of counsel. "Generally, ineffective assistance of counsel claims are more properly raised by collateral attack on the conviction under 28 U.S.C. Sec. 2255." United States v. Robinson, 967 F.2d 287, 290 (9th Cir.1992). Two exceptions are: (1) when the record on appeal is sufficiently developed to permit review, or (2) when the legal representation is so inadequate that it obviously denies defendant's sixth amendment right to counsel. Id. Tanner contends that her claims are cognizable on direct review because there are instances of ineffectiveness which cannot be explained as "tactical choice."
 
 
 36
 We decline to address Tanner's claims on direct appeal. It is far from clear on this record that some of counsel's actions could not be considered "tactical decisions." Strickland v. Washington, 466 U.S. 668, 689 (1984).
 
 
 37
 Defendants' convictions and sentences are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because Tanner disputes the admissibility of Exhibit 14, we do not consider it in examining the sufficiency of the evidence
 
 
 [2]
 Tanner also claims that "the prosecutor introduced the prejudicial information that he personally decided not to have Tanner testify before the Grand Jury after FBI Agent Niedringhaus ... determined Tanner had lied to him." It was Tanner's attorney, not the prosecutor, who elicited this information on cross-examination; it was never mentioned by the prosecutor on direct examination
 
 
 [3]
 As Briseno notes, the testimony of Grothe, another addict-informant, was much more questionable than that of Shook. The district court, however, did not rely upon Grothe's testimony for drug quantity estimates
 
 
 [4]
 Briseno also appears to argue that the district court failed to resolve his objections to the presentence report as required by Fed.R.Crim.Pro. 32(c)(3)(D). This contention is without merit. The district court made specific findings of fact regarding whether Briseno was a participant in the transactions outlined in the presentence report and whether Shook's drug quantity estimates were reliable